**Izola DUPREE et al.**

**v.**

**CITY OF CHATTANOOGA, TENNESSEE and its Commissioners, et al.**

**Civ. A. No. 6657.**

United States District Court,
E. D. Tennessee, S. D.

July 13, 1973.

Julian W. Blackshear, Jr., Avon N. Williams, Jr., Russell C. B. Ennix, Nashville, Tenn., Jack Greenberg, James M. Nabrit, III, Michael Davidson, New York City, for plaintiffs.

Eugene N. Collins, City Atty., Gary D. Lander, Randall L. Nelson, Chattanooga, Tenn., for City of Chattanooga and Commissioners.

W. A. Wilkerson, Chattanooga, Tenn., for Chattanooga Housing Authority & Billy Cooper.

## MEMORANDUM ON MOTIONS TO DISMISS

FRANK W. WILSON, Chief Judge.

This is an action for declaratory and injunctive relief. The case is presently before the Court upon motions of each of the various parties defendant to dismiss and/or to strike certain portions of the complaint. The complaint may be summarized as follows. The plaintiffs are black persons who are residents of Chattanooga, Tennessee, and who reside within a Model Neighborhood Area (MNA), an area duly designated for federally funded urban improvements under the Demonstration Cities and Metropolitan Development Act of 1966 (42 U.S.C. § 3301 et seq.), legislation administered by the United States Department of Housing and Urban Development (HUD). The plaintiffs contend that black residential areas within the City of Chattanooga, Tennessee are discriminated against in the provision of all types of municipal services. They contend that an example of such discrimination is a recent municipal ordinance which modifies the federally financed Model Cities Program (MCP) within the City in a manner adverse to the interests of the residents of the MNA and contrary to federal statutory, as well as constitutional, requirements. After averring historical and continuing discrimination in the providing of municipal services to black neighborhoods, the plaintiffs aver that a Model Cities Program was established in 1969 within a predominantly black area of the City for the purpose of improving the area and remedying the disparity of municipal services to that area. The plaintiffs contend, however, that upon November 21, 1972, the City of Chattanooga enacted an ordinance that effected a consolidation of the MCP with two other federally funded urban programs. The plaintiffs contend that this ordinance, by combining the MCP with other city-wide programs, dilutes the MCP and reduces its effectiveness in meeting the municipal services disparity in the Model Cities Area, thereby perpetuating this disparity. Named as parties defendant in the case are the City of Chattanooga, various municipal officials and administrators of the City, as well as various officials of the United States Department of Housing and Urban Development. Also named a defendant is the Chattanooga Housing Authority.

An extensive hearing was held with regard to plaintiffs' motion for a preliminary injunction restraining the implementation of the aforesaid municipal ordinance and mandating that the MCP be returned to its status prior to the passage of the ordinance. This preliminary injunction was denied. See Memorandum and Order dated February 1, 1973 (Court File Nos. 14 and 15).

The City of Chattanooga has moved to "dismiss any and all portions of the complaint against the City based upon 42 U.S.C. § 1983 because a municipality is not a 'person' within the terms of said statute." This motion is in ac-

cord with the controlling case law and will be sustained. See City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (6th Cir. 1967) cert. denied 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467.

■ It should be noted, however, that jurisdiction is also asserted over the City by virtue of 28 U.S.C. § 1331, which provides:

> "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

The plaintiffs have alleged that they have been denied equal protection of the laws by virtue of a disparity in municipal services provided by the City of Chattanooga to the white and black residents of the City, contending that the City has provided better streets, street lights, surface water drainage sewers, water mains and fire hydrants and other municipal facilities to the white citizens than to the black citizens. The plaintiffs have alleged the requisite jurisdictional amount in controversy and accordingly contend that this Court would have jurisdiction under 28 U.S.C. § 1331. It does appear that while jurisdiction would not lie as to the City under the Federal Civil Rights Statute, federal question jurisdiction is properly averred. See City of Kenosha, Wisconsin v. Bruno, *supra*; cf. Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Hawkins v. Town of Shaw, Mississippi, 437 F.2d 1286 (5th Cir. 1971) affirmed *en banc* 461 F.2d 1171. The City will accordingly remain a party defendant in the lawsuit under the allegations of federal question jurisdiction.

■ The City of Chattanooga seeks to strike and/or dismiss so much of the allegations in the complaint as aver matters that occurred more than one year prior to the filing of the lawsuit. In support of this motion the City contends that such claims are barred by the applicable statute of limitations. Upon the same ground the City further seeks to dismiss all counts alleging deprivation of rights under the Fifth and Fourteenth Amendments, contending there are no factual allegations in the complaint which assert any discrimination by reason of race that may have occurred within a one year period immediately preceding the filing of the lawsuit. Without passing upon the applicability of the limitation statute relied upon by the City, it is apparent that an allegation of present discrimination by virtue of race is made.

Accordingly, to the extent that the City seeks to rely upon the statute of limitations as a basis for dismissing the complaint, the motion to dismiss will be denied.

■ The defendants, the Mayor and City Commissioners, have moved to dismiss the action against them in their official capacities because there are no allegations of bad faith or intentional or purposeful discrimination made against them, and they are therefore immune. The members of a governing body of a city and other public officers, however, are "not clothed with complete immunity but [enjoy] instead a qualified privilege." Nelson v. Knox, 256 F.2d 312, 315 (6th Cir. 1958); Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970); Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953).

■ As stated by then Circuit Judge Potter Stewart in writing the opinion for the Court in Nelson v. Knox, *supra*:

> "It is our opinion that the defendants in this case were not clothed with complete immunity but enjoyed instead a qualified privilege. As to the nature and extent of the privilege, we are content to accept the well considered views of Chief Judge Magruder . . . as expressed in Cobb v. City of Malden, *supra*.

"Drawing upon general principles of common law, Judge Magruder wrote:

" 'Hence I take it as a roughly accurate generalization that members of a city council, and other public officers not in the exceptional category of officers having complete immunity, would have a qualified privilege, giving them a defense against civil liability, for harms caused by acts done by them in good faith in performance of their official duty as they understood it. [citing cases] But on ordinary principles of the law of torts, I think that members of a city council would be liable in damages for pecuniary harm to a plaintiff intentionally inflicted by action, under color of official authority, which the defendants subjectively realized would result in depriving the plaintiff of a right or privilege secured by the Constitution of the United States. . . .' "

Where racial motivation is found to exist, the defenses of good faith action and qualified immunity are not available. Curry v. Gillette, 461 F.2d 1003 (6th Cir. 1972), cert. denied 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492.

In considering a motion to dismiss, the Court must read the allegations with liberality and indulgence to the pleader. The complaint alleges that plaintiffs have been discriminated against because of their race by virtue of a disparity in municipal services. Accordingly, upon this record the Court cannot say that the defenses of good faith action and qualified immunity are established. Curry v. Gillette, *supra*. As stated in Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2nd Cir. 1968):

" 'Equal protection of the laws' means more than merely the absence of governmental action designed to discriminate; as Judge J. Skelly Wright has said, 'We now firmly recognize that the arbitrary quality of thoughtlessness can be as disastrous and unfair to private rights and the public interest as the perversity of a willful scheme.' Hobson v. Hansen, 269 F. Supp. 401, 497 (D.D.C.1967)."

See Hawkins v. Town of Shaw, Mississippi, *supra*.

Accordingly, the motions of the mayor and the City Commissioners to dismiss the action against them in their official capacities will be denied. No cause of action being averred and no relief being sought against them in their individual capacity, their motion to dismiss to the extent that they may be sued in an individual capacity will be sustained.

The defendants McCants, Blumberg and Moore have moved to be dismissed because all relief sought against them would only be incident to and included in the relief sought against the City of Chattanooga and its elected officials. The injunctive relief sought is not directed towards these individuals but rather is directed towards the City and its commissioners and the enforcement of an ordinance passed by the commissioners. Any relief obtained against the City or its commissioners will be binding on these defendants and the programs they are associated with. The Court is of the opinion that the motion should be granted as to these defendants.

The motion to strike and/or dismiss the action as a class action must also be denied on the present record. This action was filed as a class action on behalf of all residents of the Model Neighborhood Area and residents of all other segregated black residential areas in the City of Chattanooga, Tennessee, who, it is alleged, are being discriminated against in the provision of municipal services. It appears that the provisions of Rule 23(a) and (b)(2), F. R.C.P., may be met. The mere fact that certain portions of the class seek relief which is not identical with other members of the class does not compel dismissal of the action as a class action. The determination of the propriety of maintaining this lawsuit as a class action

should be reserved for further developments in the case.

■ The defendants further seek to dismiss so much of the complaint as attempts to enjoin or mandamus the actions of the City and its officials in changing the administrative structure of the MCP. While it is true that the federal courts should not "become an 'administrative arm of local government,'" Peek v. Mitchell, 419 F.2d 575, 579 (6th Cir. 1970), the Court is not without authority to prevent discrimination or to correct the results of past discrimination.

The Court is of the opinion that if the allegations of the complaint are established, it would have a duty to effect a remedy. See, for example, Swann v. Charlotte-Mecklenberg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed. 2d 554 (1971), wherein the Court stated:

> "If school authorities fail in their affirmative obligations under these holdings, judicial authority may be invoked. Once a right and a violation have been shown, the scope of the district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "In seeking to define even in broad and general terms how far this remedial power extends it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults." 402 U.S. at pp. 15–16, 91 S.Ct. at p. 1276.

The final motion to dismiss filed by the City and its officials is that the complaint fails to state a claim upon which relief can be granted. This general motion to dismiss is believed to be without merit and will be denied.

The federal defendants have moved to be dismissed from this action or in the alternative for summary judgment. Two grounds are raised by these defendants. The first ground is that the plaintiffs have failed to exhaust their administrative remedies and the second ground is that the plaintiffs have failed to present a justiciable controversy with respect to the Model Cities claims in that no final agency approval has been given.

■ The plaintiffs have alleged that the federal agency and its officials have worked with the City and have encouraged the proposed merger and given tentative approval thereto. The plaintiffs contend that this approval has the effect of a final agency action within the meaning of 5 U.S.C. § 704 and that it would be futile to pursue the administrative remedies.

Pursuant to 42 U.S.C. § 2000d–1, the Department of HUD promulgated administrative procedures for effecting compliance with the nondiscrimination requirements of certain federal financial assistance programs, including the Model Cities Program; and Title I, Demonstration Cities and Metropolitan Development Act of 1966, 42 U.S.C. § 3301. See 24 C.F.R. Part 1. See also 24 C.F. R. Part 2, Practice and Procedure for hearings under Part 1. It appears to be undisputed that the plaintiffs have failed to exhaust these administrative procedures.

■ The Court is of the opinion that it would not be a futile gesture to require the plaintiffs to pursue their administrative remedies. The purpose of the exhaustion doctrine is to afford the agency an opportunity to correct its own errors without judicial intervention. As stated in Parisi v. Davidson, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972):

> "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a fac-

tual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."

See McGee v. United States, 402 U.S. 479, 485, 91 S.Ct. 1565, 29 L.Ed.2d 47, 53; McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194, 203–204.

It further appears that no final agency decision has been rendered. Accordingly, the Court is of the opinion that the motions of the federal defendants to dismiss and/or for summary judgment should be granted. This dismissal is without prejudice to plaintiffs' rights to judicial review, if necessary, subsequent to an exhaustion of administrative remedies.

An order will enter in accordance with this opinion.