Barry JABLON, Plaintiff-Appellee,

v.

TRUSTEES OF the CALIFORNIA STATE COLLEGES et al., Defendants-Appellants.

No. 73-1485.

United States Court of Appeals, Ninth Circuit.

Aug. 9, 1973.

Rehearing Denied Sept. 5, 1973.

John J. Klee, Jr., Deputy Atty. Gen., (argued), Evelle J. Younger, Atty. Gen., Elizabeth Palmer, Asst. Atty. Gen., San Francisco, Cal., for defendants-appellants.

Sheldon L. Greene (argued), of Lorenz & Greene, Levy & Van Bourg, San Francisco, Cal., for plaintiff-appellee.

Before BARNES and CHOY, Circuit Judges, and MURRAY *, District Judge.

* The Honorable W. D. Murray, Sr. U. S. District Judge for the District of Montana, sitting by designation.

CHOY, Circuit Judge:

Dr. Barry Jablon, an untenured assistant professor of English at San Francisco State College (the College), brought this suit charging that his employment was unlawfully terminated at the end of the 1970–1971 academic year. In the fall of 1969, Jablon was informed that the president of the College, Dr. S. I. Hayakawa, had determined that 1970–1971 would be Jablon's terminal year. However, Hayakawa indicated that his decision was not final and that he was calling for a later reevaluation.

Hayakawa's decision not to rehire Jablon did not follow the formal written recommendations of the department's Hiring, Retention and Tenure Committee (HRT), the department chairman, or the dean of the School of Humanities. And, despite a further recommendation of HRT that Jablon be rehired, Hayakawa decided in the spring of 1970 not to change his original decision.

Jablon then initiated proceedings under the Interim Grievance Procedures for Academic Personnel then in effect on the campus. The grievance procedures provide for a hearing before a committee composed of tenured faculty members and permit the aggrieved instructor to introduce evidence of his own and examine any witnesses against him. Although the recommendation of the committee is not binding upon the president, the grievance procedures provide:

> 6.3  The decision of the President, except in rare cases and for compelling reasons, shall concur with the judgment of the hearing committee. In the event that the President's decision is not in accord with the grievance committee's judgment, the compelling reasons for his decision shall be stated in writing to the aggrieved and to the hearing committee.

At the hearing, Jablon argued only that he was academically qualified and, therefore, he should be retained. After deliberating, the committee voted 4–1 that the president should review the decision not to retain Jablon. Hayakawa requested a clarification of what the committee meant by the vote. The chairman, without consulting the other members indicated that he interpreted the four votes for review to mean votes for retention. But when the individual members of the committee were asked to interpret their votes, two members said Jablon should be retained; one member said he should not be retained; and two members declared that their votes had only been for an additional review of the case.

In view of this split, Hayakawa concluded that the committee had failed to reach a decision on the issue of Jablon's retention and that it was impossible for him to concur as required by Section 6.3 of the Grievance Procedures. He reviewed the decision again since it was clear that a majority of the committee wanted a review and determined that his original decision should stand.

Jablon was notified of the decision and registered an appeal with the Chancellor of the California State Colleges as is permitted under the grievance procedures. The chancellor, however, can only review those decisions when the president fails to concur with the hearing committee and the chancellor interpreted Hayakawa's decision as a concurrence with the hearing committee's decision requesting a review.

Thereafter, Jablon commenced this lawsuit. The basis of the lawsuit is substantially different from the issue raised in the grievance proceedings. Whereas the grievance proceeding dealt only with Jablon's academic qualification, the gravamen of the lawsuit is that Jablon was not retained because of his political beliefs and union membership.[1]

---

1.  From 1968 through 1970, the college was in turmoil and the faculty and students were divided on many academic and political issues. There were both student and faculty strikes during the period. Jablon was an active and vocal member of the teachers' union which actively supported the strike. President Hayakawa was a vocal opponent of the strikes and allegedly very hostile to the leaders of the strike.

The district court, however, never reached this issue because it had not been raised at the college administrative proceeding.

But the court ordered the College to reinstate Jablon with back pay, ruling that the president had violated the College rules in not remanding the matter to the committee for further deliberation until the committee reached a definite decision on the retention issue. The court felt that if the committee were unable to break its deadlock, the president would have to request that a new committee be formed to hear the matter *de novo*.

As an alternate ground for ruling in favor of Jablon, the court held that the College had imposed a stigma upon Jablon, so he was entitled by procedural due process concepts to an evidentiary hearing on his termination, and that the grievance procedure hearing did not fulfill the constitutional requirement. We reverse.

██ We agree with the district court that we cannot consider Jablon's first amendment claims. Formal presentation of a claim in the administrative proceeding is a prerequisite to a lawsuit. Toney v. Reagan, 467 F.2d 953 (9th Cir. 1972); Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969).

██ However, we disagree with the court's conclusion that rights guaranteed Jablon by Section 6.3 were violated. The court interpreted the college rules to require a majority recommendation on the issue of retention before the president could act. The rules do not require the committee's recommendation to be either for retention or nonretention. The rules only state that:

Upon arriving at a decision by majority vote, the hearing committee shall forthwith transmit to the President or to the acting chief administrative officer of the college, and to the aggrieved, a written statement of the committee's findings and recommendations together with a complete record of the committee's proceedings . . . .. Rule 5.51.

The Vice President of the College, Dr. Garrity, testified that recommendations to review without any specific recommendation with regard to retention had often been accepted in the past as valid recommendations.

██ Nothing in the rules provides that in the case of a split vote on the issue of retention, a remand or *de novo* hearing is required, or suggests that the president must require a split vote to be reconsidered, or that a deadlocked committee must be disbanded and a new committee appointed. While such procedures would be reasonable for the College to adopt, we have no authority to amend the grievance procedures accordingly. The issue before us is only whether the College complied with its existing rules.

The committee agreed that the president should review his original decision. The president did just that. A majority of the committee did not conclude that Jablon should be retained. The committee's decision was in effect that the president in his discretion should resolve the problem. He did.

██ Since the action of the president was consistent with the recommendation of the hearing committee, Jablon was properly denied his right to appeal to the chancellor.

██ We are dealing with a set of rules drafted and adopted by the College in conformity with guidelines issued by the Board of Trustees of the State College System. Both the College and the chancellor's office reviewed this matter and concluded that the proper procedures had been followed. When a local regulation is silent on a particular problem and the point has been considered by those who drafted the regulation and have dealt with it on a day-to-day basis since its adoption, considerable weight must be given to their interpretation. We think the College fairly and substantially complied with its own regulations.

We also disagree with the district court's alternate ground for its decision. The court found that the College's decision not to rehire Jablon, coupled with the president's charges against Jablon, imposed a stigma upon Jablon which damaged his standing in the community and his opportunities for future employment; therefore, he was entitled to a hearing on his nonretention by due process concepts, citing Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

We think the court below misapplied *Roth*. A hearing is only required when a charge is made that "might seriously damage his standing and associations in the community . . . for example, that he had been guilty of dishonesty or immorality. Had it [the State] done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' . . ." *Roth, supra* at 573, 92 S.Ct. at 2707.

Thus, only a limited type of stigma that seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities requires a hearing. In the instant case, Jablon was not so disadvantaged. The College did not attack his honesty or integrity. The reasons raised at the grievance hearing all related to his academic performance at the College, which did not deem him to be a good enough overall teacher and scholar to merit retention. This is not the type of stigma that the Court was referring to in *Roth*. Moreover, the fact that this may have a deleterious effect upon Jablon's future employment prospects is unfortunate, but the Supreme Court specifically noted in *Roth, supra* at 574, n. 13, 92 S.Ct. 2701 that this "kind of foreclosure of opportunities" does not give rise to a right to a hearing. Accordingly, due process concepts do not require that the college grant Jablon another hearing on the issue of his retention.

In light of our decision, we need not determine whether the district court was prohibited by the Eleventh Amendment from ordering the State to pay Jablon back wages.

Reversed.