**Mary C. GRAY, Plaintiff-Appellant,**

**v.**

**UNION COUNTY INTERMEDIATE EDUCATION DISTRICT, a political subdivision, et al., Defendants-Appellees.**

**No. 73–3072.**

United States Court of Appeals,
Ninth Circuit.

July 1, 1975.

---

Jerry D. Anker (argued), Washington, D. C., for plaintiff-appellant.

Robert M. Greening, Jr. (argued), Portland, Or., for defendants-appellees.

OPINION

Before KOELSCH and BROWNING, Circuit Judges, and MURRAY,* District Judge.

WILLIAM D. MURRAY, District Judge:

The appellant, Mary Gray, is a special education teacher who was employed on a year to year contract basis by the Union County Intermediate Education District (I.E.D.). I.E.D. is a separate entity with its own budget, staff and Board of Directors, but it does not operate any schools. Its teachers work in schools of other school districts, providing special services—such as speech therapy, special education, learning resource centers, and others. Mrs. Gray initiated this lawsuit against I.E.D., its acting Superintendent and the members of its Board of Directors, alleging a violation of her due process and first amendment rights in connection with the nonrenewal of her teaching contract.

During the spring of 1970, the appellant became involved in an effort to assist a student who had become pregnant; Mrs. Gray advised the girl that she had a right to a therapeutic abortion. Subsequently, the girl was made a ward of the State Welfare Department and the Department decided an abortion was not advisable. Mrs. Gray insisted that the girl be dealt with in a manner other than as the Welfare Department had determined was best, thereby creating a problem in the relationship of I.E.D. and the Welfare Department.

---

* Honorable William D. Murray, Senior United States District Judge, District of Montana, sitting by designation.

In March of 1971, the I.E.D. Board voted not to renew the appellant's contract for 1971–72, and a hearing on the matter was held at Mrs. Gray's request on April 14, 1971. The Board voted to sustain their original decision not to hire Mrs. Gray for the upcoming year, and this suit followed. Although the district court found that the incident involving the pregnant student formed at least part of the basis for the Board's decision, the court also found that Mrs. Gray's activities with regard to that matter exceeded the scope of free speech, and thus the appellant's first amendment rights were not violated. In addition, the district court held that the nonrenewal of Mrs. Gray's contract did not result in either a loss of liberty or property to her, and therefore she was not denied due process. The appellant contests both the first amendment and due process rulings.

## I. Jurisdiction

■ The plaintiff in this case alleged jurisdiction under 28 U.S.C. § 1343 (and its counterpart 42 U.S.C. § 1983) and 28 U.S.C. § 1331. Although the district court concluded that jurisdictional requirements were met here, it failed to specify the statutory basis for such jurisdiction. The appellees maintain that I.E.D. is a political subdivision of Oregon, and that states and their subdivisions are not "persons" within the meaning of 42 U.S.C. § 1983, and hence are not amenable to suit. Courts which have considered this issue have arrived at varying conclusions[1]; however, it is not necessary for this court to rule on the question at this time. The I.E.D. Board members and Superintendent were sued in their individual and official capacities, and any orders directed against them would be indirectly binding on I.E.D. See Harper v. Kloster, 486 F.2d 1134, 1137–38 (4th Cir. 1973); Harkless v. Sweeny Independent School Dist., 427 F.2d 319, 323 (5th Cir. 1970); Clarke v. School Bd. of Union County, Fla., No. 72–299–Civ–J–S (M.D.Fla. July 16, 1974); Alexander v. Kammer, 363 F.Supp. 324 (E.D.Mich.1973).

■■■ The complaint in this case was also based on 28 U.S.C. § 1331, which grants federal court jurisdiction over suits involving a federal question with over $10,000 in controversy. Since the plaintiff in this suit charges a violation of her constitutional rights and ·seeks back pay and $100,000 in incidental damages, the requirements of § 1331 are clearly met. The "person" requirements of § 1983 do not apply to § 1331, and hence political subdivisions can be sued. See City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Dupree v. City of Chattanooga, Tenn., 362 F.Supp. 1136, 1139 (E.D.Tenn.1973).

## II. Was the Appellant Denied Due Process?

The appellant maintains that the School Board's failure to provide her with a fair and meaningful hearing before deciding to terminate her employment deprived her of "liberty" without due process of law. In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court made it clear that the requirements of procedural due process apply when a teacher is being deprived of his job, if such action would result in a loss of "liberty" or "property." This is not a "property loss" case; Mrs. Gray was not dismissed during her contract term, tenure, or despite an "implied promise of continued employment." (Id. at 577, 92 S.Ct.

1. Those courts which have considered the question of whether or not school districts or state (or state related) universities are "persons" under § 1983 have reached disparate results. See e. g., Campbell v. Masur, 486 F.2d 554 (5th Cir. 1973), Sellers v. Regents of University of California, 432 F.2d 493, 500 (9th Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971) [indicating jurisdiction is improper under § 1983]. But see, e. g., Aurora Education Ass'n East v. Bd. of Education of Aurora Pub. School Dist. No. 131 of Kane County, Ill., 490 F.2d 431, 435 (7th Cir.), cert. denied, 416 U.S. 985, 94 S.Ct. 2388, 40 L.Ed.2d 762 (1974); Green v. Dumke, 480 F.2d 624, 629 (9th Cir. 1973) [suggesting that § 1983 would not bar suit under these circumstances]. See also, Samuel v. University of Pittsburgh, 375 F.Supp. 1119 (W.D.Pa.1974).

2701). To determine whether or not there has been a deprivation of liberty under these circumstances, it is necessary to examine more closely the language of *Roth.* Under *Roth,* a hearing is required only when a charge is made that "might seriously damage [ones] standing and associations in his community . . . for example, that he had been guilty of dishonesty, or immorality . . . For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" *Id.* at 573, 92 S.Ct. at 2707.

■■ Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character. *Jenkins v. U. S. Post Office,* 475 F.2d 1256, 1257 (9th Cir. 1973). But not every dismissal assumes a constitutional magnitude. The concern is only with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities. *Roth, supra* at 573, 92 S.Ct. 2701; *Jablon v. Trustees of California State Colleges,* 482 F.2d 997, 1000 (9th Cir. 1973), *cert. denied,* 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). The charges against Mrs. Gray included a letter announcing the nonrenewal of her contract due to her "student and parent problems" and "the ensuing situation with [her] student aide program." In addition, at the school board hearing a letter from the pregnant girl's Welfare Department case worker was read; it accused Mrs. Gray of "deliberately undermin[ing] the united planning of the community's professional social agencies." A letter from a former director of special education charging the appellant with insubordination, incompetence, hostility toward authority, and aggressive behavior was also presented at the hearing. These allegations certainly are not complimentary and suggest that Mrs. Gray may have problems in relating to some people, but they do not import serious character defects such as dishonesty or immorality.

Personality differences or difficulty in getting along with others are simply not the kinds of accusations which warrant a hearing, as contemplated by *Roth, supra.* See e. g., *Jablon, supra; Irby v. McGowan,* 380 F.Supp. 1024 (S.D.Ala.1974); *Courter v. Winfield-Mt. Union Community School Dist.,* 378 F.Supp. 1191 (S.D. Iowa 1974).

■ Having determined that the nonrenewal of the appellant's employment contract did not deprive her of "liberty," the court need not determine whether the hearing provided by the school board satisfied the requirements of due process.

III. *Did the Termination of Plaintiff's Employment Violate Her First Amendment Rights?*

■■ Nonrenewal of even an untenured teacher may not be predicated on his exercise of first amendment rights. *Perry v. Sinderman,* 408 U.S. 593, 598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Appellees have suggested that Mrs. Gray's contract was not renewed for reasons other than her association with the incident involving the pregnant student. However, both the appellees and the district court agree that "[t]here is no question but what [Mrs. Gray] was not retained partially because of the incident involving the young girl." A decision to terminate employment of a teacher which is only *partially* in retaliation for the exercise of a constitutional right is unlawful. *Sinard v. Board of Education of Groton,* 473 F.2d 988, 995 (2d Cir. 1972); *Fluker v. Ala. State Board of Education,* 441 F.2d 201, 210 (5th Cir. 1971); *Cook County College Teachers Union v. Byrd,* 456 F.2d 882, 888 (7th Cir.), *cert. denied,* 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972).

Thus the question is, did appellant's behavior in the matter involving the pregnant student go beyond constitutionally protected "free speech?" The trial court found that Mrs. Gray was not terminated because of her "opinion" or "advice" to the student, but because of her activities in the affair which interfered

with the judgment of the Welfare Department. We do not find this determination by the district court clearly erroneous.

The following is some of the evidence before the district court which would justify its conclusion. The student in question had been certified mentally retarded; Mrs. Gray knew this, and yet she insisted that the girl be allowed to choose between an abortion and having the baby. The Welfare Department which had been granted custody of the girl, decided that an abortion was neither legal nor in the best interests of the girl. It acted upon the recommendations of a psychiatrist who had examined the girl. Mrs. Gray persisted in her efforts to secure an abortion for the student. The appellant phoned the psychiatrist and engaged in a "heated discussion" concerning the psychiatrist's recommendation. Mrs. Gray vehemently expressed her opposition to the Welfare Department's decision to the case worker in charge of the matter. In addition, Mrs. Gray spoke extensively with relatives of the girl in an effort to secure their assistance in overriding the Welfare Department's decision. Mrs. Gray spoke with the pregnant girl despite Welfare Department instructions to the contrary. The appellant contacted the judge overseeing the girl's custody and various attorneys in an effort to reopen the abortion issue. As a result of Mrs. Gray's interference the student was removed from school before the completion of the school term. The appellant's activities went beyond free speech. Although the first amendment entitles an individual to voice controversial ideas, it does not entitle him to try to force his ideas and opinions upon others through harassment or other means.

In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court indicated that the free speech rights of teachers must be balanced with those of the state in assuring "orderly school administration." One of the factors which the court suggested might warrant dismissal was criticism directed towards those with whom the speaker would be in daily contact in the course of his employment, thus raising a "question of maintaining either discipline by immediate superiors or harmony among coworkers . . . " *Id.* at 569–70, 88 S.Ct. at 1735.

It was important that a close working relationship be maintained between I.E.D. and the Welfare Department and other agencies which dealt with the same children who were in need of special services. As a result of Mrs. Gray's importunate activities in the matter discussed, the district court found that Mrs. Gray created so much "havoc" with the Welfare Department that relations between the Department and I.E.D. were strained.

The nonrenewal of appellant's teaching contract did not constitute a denial of her first amendment or due process rights; the judgment is affirmed.