425 So.2d 807 (1982)
William R. HICKS
v.
Jesse N. STONE, et al.
No. 14970.
Court of Appeal of Louisiana, First Circuit.
October 21, 1982.
Rehearing Denied December 16, 1982.
Writ Denied February 11, 1983.
*808 R. Judge Eames, Murphy W. Bell and Robert C. Williams, Baton Rouge, for plaintiff-appellant William R. Hicks.
William J. Guste, Jr., Atty. Gen., State of La., Cassandra Simms, Richard Rudolph, Asst. Attys. Gen., Baton Rouge, for defendants-appellees Dr. Jesse N. Stone, Indiv., & as President of Southern University & The Bd. of Supervisors of Southern University: Rev. Lionel Johnson, Marie Mitchell Carter, Betty L. Washington, Pearlie Hardin Elloie, William N. Panter, Gerald T. Peltier, Donald Verrett, Rev. Brady L. Blade, Booker D.
*809 Harrison, Timothy G. Wade, Ray Oliver Wright, Walter C. Dumas, Robert L. Jones, Earnest Neighbors, Roscoe J. Moore, Russell Manuel, and Sheila Simmons.
Before LEAR, CARTER and LANIER, JJ.
LEAR, Judge.
Plaintiff-appellant, Dr. William R. Hicks (Dr. Hicks), was dismissed as Dean of the College of Education of Southern University by action of the Southern University Board of Supervisors taken at a meeting on April 22, 1978. Thereafter, Dr. Hicks sued Dr. Jesse N. Stone (Dr. Stone), who was the President of Southern University. Also made defendants were the Southern University Board of Supervisors (The Board) and the seventeen individual members of the board. In his suit, Dr. Hicks sought injunctive relief pursuant to LSA-R.S. 42:4.1, et seq. (the Louisiana Open Meetings Law) and damages against all defendants for defamation under La.C.C. arts. 2315 and 2315.1 and for damages for violation of his civil rights under Sections 1983 and 1988 of Title 42 of the United States Code. A trial of this cause was begun, and, at the close of Dr. Hicks' case, all defendants moved for a directed verdict, which was granted by the trial judge in favor of the Southern University Board of Supervisors and each individually named member thereof. The trial judge, however, refused to grant a directed verdict in favor of defendant Stone, and plaintiff's defamation action against defendant Stone was submitted to the jury, which rendered a verdict in favor of plaintiff and against Dr. Stone in the amount of $5,000.00. Plaintiff has appealed the judgment granting defendants' motion for directed verdict. In an answer to the appeal, Dr. Stone seeks reversal of the judgment rendered against him in accordance with the jury's verdict.
Plaintiff specifies the errors of the trial court as follows:
1. The trial judge erred in denying injunctive relief sought pursuant to LSA-R.S. 42:4.1, et seq.
2. The trial judge erred in granting defendants' motion for a directed verdict.
3. The trial judge's instructions did not fairly state the legal principles to be applied by the jury.
The facts are essentially these: Plaintiff for some time had been the Dean of the College of Education of Southern University and thus was responsible for the administrative and academic affairs of the College of Education, which encompassed the preparation for elementary and secondary teaching, elementary and secondary principalship and supervision, and the program in guidance. At the end of 1975, the Southern University College of Education was preparing to be examined by the National Council for Accreditation of Teacher Education (NCATE) with regard to its reaccreditation of programs at the baccalaureate level to prepare teachers for elementary and secondary school teaching. The College of Education also sought initial accreditation of its master's degree level program for elementary and secondary teaching, elementary and secondary principalship and supervision, and the program in guidance. An NCATE team was scheduled to visit and review the Southern University College of Education in the spring semester of 1976. However, in January, 1976, Dr. Hicks informed an official of NCATE that the College of Education would not be prepared for the reviewing team to visit that semester and requested a postponement of the review until the fall semester of that year, which request was granted. An NCATE review was held during the fall semester of 1976 and by letter addressed to Dr. Stone, dated May 24, 1977, NCATE advised Southern University of their decision to deny the College of Education reaccreditation to programs at the baccalaureate level and to deny initial accreditation at the master's degree level. The university then availed itself of the NCATE appeal process, however, by letter from them to Dr. Stone, dated February 9, 1978, the university was informed that NCATE's initial denial of reaccreditation at the baccalaureate degree level would be upheld, and that a denial of *810 accreditation of the advanced programs would necessarily follow this decision.
Approximately two months after this loss of NCATE accreditation Mr. Roosevelt Steptoe, Chancellor of Southern University, wrote a letter to Dr. Stone with regard to the College of Education, in which he stated that:
"My assessment of the needs of the College of Education has led me to the conclusion that immediate action is necessary in providing new leadership for that important area. Accordingly, I am recommending that the services of Dr. William R. Hicks as Dean of the College of Education be terminated immediately. Dr. Hicks is a tenured professor in the College of Education and we expect his services as a teacher to be continued."
At their April 22, 1978, meeting, Dr. Stone informed the Southern University Board of Supervisors of this situation. In this regard, the minutes of that meeting provide as follows:
"President Stone, at the request of the chairman, explained that he had received a letter from Chancellor Steptoe in which he had recommended that Dr. William Hicks' services as Dean of the College of Education on the Baton Rouge campus be terminated immediately. The president indicated that he concurred in the recommendation because of the difficulties which developed in reference to the NCATE action, the fact that Dr. Hicks served as chairman of the Teacher Education Council, a governance unit of the College of Education. [sic] and as such had not called that group into session for three years. It was also revealed that there had been some correspondence between Dr. Hicks and NCATE in 1976 which was not shared with the administration until April, 1978.
"On motion of Mrs. Elloie, seconded by Mrs. Carter, Dr. Hicks was removed as Dean of the College of Education.
"A roll call vote produced the following: 12 yeas, 0 nays. Mr. Crosby's yea vote was recorded but not counted."
Thereafter, Dr. Hicks requested an opportunity for a hearing to present evidence in his behalf in order to explain his actions and to obtain reinstatement by the Board of Supervisors. Upon this request, a committee was appointed and a full hearing held, in which Dr. Hicks testified and presented other evidence in his behalf. Upon this evidence, this committee recommended to the Board of Supervisors that Dr. Hicks be reinstated. However, at the time the instant suit was filed by Dr. Hicks on April 20, 1979, approximately one year after his dismissal, no further action had been taken by the Board of Supervisors on its committee's recommendation, nor had the Board officially acted to either reinstate Dr. Hicks or confirm their prior dismissal of him.
The first issue presented by plaintiff concerns the denial by the trial court of an injunction pursuant to LSA-R.S. 42:4.1, et seq. (the Louisiana Open Meetings Law). The basis of plaintiff's action seeking injunctive relief under these statutory provisions was that, after suit had been filed and during pretrial discovery, plaintiff was informed that a private, informal vote of The Board was taken with regard to the committee's recommendation to reinstate Dr. Hicks, and that The Board, by a vote of nine to six, with two members not voting, decided not to reinstate Dr. Hicks. However, this secret "decision" not to reinstate Dr. Hicks was never made public, not taken by The Board at a properly called or conducted meeting and, thus, was in no way an official action of The Board. In fact, as we will discuss below, one of Dr. Hicks' main complaints was that The Board refused or failed to take official action on its committee's recommendation to reinstate him.
Thus, since The Board, in fact, took no final or official action pursuant to its secret vote, we find that the trial court was correct in denying Dr. Hicks injunctive relief.
The appellant contends that the trial court committed error by dismissing his civil rights action under 42 U.S.C. 1983, et seq., against the Board and the individual members thereof on a motion for directed verdict pursuant to La.C.C.P. art. 1810. The *811 appellant first contends that he is entitled to maintain this civil rights action because he was deprived of a property right, his position as Dean of the College of Education, by the State without due process of law because he was not given a hearing prior to his dismissal from that position. The law applicable to this allegation is set forth in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2708-9, 33 L.Ed.2d 548 (1972), as follows:
"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interestsproperty interestsmay take many forms.
* * * * * *
"Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692, and college professors and staff members dismissed during the terms of their contracts, Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, have interests in continued employment that are safeguarded by due process. Only last year, the Court held that this principle `proscribing summary dismissal from public employment without hearing or inquiry required by due process' also applied to a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment. Connell v. Higginbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418. "Certain attributes of `property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law__rules or understandings that secure certain benefits and that support claims of entitlement to those benefits...."
(Emphasis added).
The record shows that the appellant was appointed by the Board as a Dean and Professor of the College of Education for the 1977-78 fiscal year at a salary of $24,082.00. This appointment was "subject to applicable policies and regulations of the Southern University Board of Supervisors...." The appointment as Professor of the College of Education at a salary of $24,082.00 was a tenured appointment. The appointment as Dean of the College of Education was not tenured. The applicable policies and regulations provided that the appointment as Dean was at the pleasure of the Board. After the appellant was dismissed as Dean, he retained his appointment as Professor of the College of Education and his salary of $24,082.00 was not reduced.
Since the appellant served as Dean at the pleasure of the Board, he had no express or implied promise of continued employment in that position. Because the appellant did not have a legitimate claim of continued entitlement to the position of Dean of the College of Education pursuant to the express conditions of his employment, he did not have a property interest sufficient to require the Board to give him a hearing prior to his dismissal. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Brown v. Hirst, 443 F.2d 899 (4th Cir.1971); Hodgin v. Noland, 435 F.2d 859 (4th Cir.1970); Patterson v. Ramsey, 413 F.Supp. 523 (D.Md.1976), affirmed 552 F.2d 117 (4th Cir.1977); Hirsch v. Green, 368 F.Supp. 1061 (D.Md.1973).
*812 The appellant also contends that he is entitled to maintain his civil rights action because he was deprived of a liberty right since he was not given a pre-termination hearing when he was dismissed with criticism from his position of Dean of the College of Education. The law applicable to this allegation is set forth in Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1100-1101 (9th Cir.1981), as follows:
"The liberty protected by the due process clause of the fifth and fourteenth amendments encompasses an individual's freedom to work and earn a living. Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name. Board of Regents v. Roth, supra, 408 U.S. at 573 & n. 12, 92 S.Ct. at 2707 & n. 12; e.g., Goss v. Lopez, 419 U.S. 565, 575, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to `stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities. Board of Regents v. Roth, supra, 408 U.S. at 573-74, 92 S.Ct. at 2707-08; see Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (charges reflecting on `good name, reputation, honor, and integrity').
"This court has described the stigma that infringes liberty interests as that which `seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities....' Jablon v. Trustees of California State Colleges, 482 F.2d 997, 1000 (9th Cir.1973) (emphasis added), cert. denied, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Subsequent panels have set the boundary of liberty interests at accusations of `moral turpitude,' such as dishonesty or immoralityi.e., charges that do not reach this level of severity do not infringe constitutional liberty interests. See, e.g., Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361, 365-66 (9th Cir.1976); Gray v. Union County Intermediate Education District, 520 F.2d 803, 806 (9th Cir.1975). See also Board of Regents v. Roth, supra, 408 U.S. at 573, 92 S.Ct. at 2707. Thus, in both Stretten and Gray it was held that dismissal for reasons of incompetence and inability to `get along' with co-workers did not infringe liberty interests. 537 F.2d at 366; 520 F.2d at 806; accord Weathers v. West Yuma County School District R-J-1, 530 F.2d 1335 (10th Cir. 1976)."
In his letter to President Stone, Chancellor Steptoe recommended that the appellant be terminated as Dean of the College of Education in order to provide new leadership in that important area. In making his presentation to the Board, President Stone agreed with Chancellor Steptoe's recommendation because of the actions of the NCATE in withholding accreditation, the fact that the appellant did not call a meeting of the Governance Unit of the College of Education for three years, and because the appellant did not reveal some of the correspondence between himself and the NCATE to the administration for an extended period of time. The record amply demonstrates that the appellant was removed as the Dean of the College of Education because the Board believed that he was an ineffective administrator and improperly performed his duties as Dean of the College. These allegations are not accusations involving moral turpitude, such as dishonesty or immorality, sufficiently serious to "stigmatize" the appellant. As hereinafter indicated, these statements do not constitute defamation under the tort law of Louisiana. The actions of the Board and its members did not burden the appellant so that he could not take advantage of other employment opportunities. He remained as a tenured Professor of the College of Education and his salary was not reduced. At the time of the trial, the appellant was employed as a tenured Professor of Education at a salary of $32,000.00 per annum and was head of the Teacher's Corps at a salary *813 of $7,400.00 per annum, for a total salary of $39,400.00. The action of the Board and its individual members did not infringe upon the appellant's liberty interests. It should be further noted that, in any event, the appellant was granted a full hearing before a committee appointed at his request and was given an opportunity to defend himself and present evidence in his own behalf.
Under all of these circumstances, the trial court's directed verdict dismissing the appellant's civil rights action against the Board and its members was correct and is affirmed.
An essential element of defamation is the publication or communication of words or some statement. Dr. Hicks has alleged no statement by the Board or its individual members, but rather, bases his defamation action against them on their action in terminating him. We find that the Board's action in terminating Dr. Hicks is not in itself the communication of words or a statement concerning Dr. Hicks. Thus, Dr. Hicks having failed to prove an essential element of his defamation action against the Board and its individual members, the trial court was correct in granting them a directed verdict.
With regard to the statement to the Board by Dr. Stone, we find that Dr. Hicks is a public official, or at least a public figure, with regard to his involvement with the university and, as such, must prove actual malice in order to recover in his action for defamation. Gerz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed. 789 (1974); New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Actual malice has been defined as being a knowing falsity or a reckless disregard for the truth or falsity of the statement. Gertz v. Robert Welch, Inc., supra; New York Times Company v. Sullivan, supra.
We find that Dr. Stone was aware of the NCATE denial of reaccreditation to the College of Education and also of their (the NCATE's) finding that Dr. Hicks, as chairman of the Teacher Education Council, a governance unit of the College of Education, had not called that group into session for three years. Dr. Stone also testified that he had at that time become aware of certain correspondence in 1976 between Dr. Hicks and NCATE, with regard to the matter of reaccreditation. The record, including the testimony of Dr. Stone and others and the letters written by Chancellor Steptoe, Dr. Hicks and NCATE officials, clearly shows that, in light of the circumstances, Dr. Stone reasonably believed in the truth of his statements to the Board and his statements were clearly not made in reckless disregard of their truth or falsity.
While Dr. Hicks alleges that Dr. Stone's statements, and his concurrence in the recommendation to terminate Dr. Hicks, were based on problems at Southern University's Ville Platte facility, we find that the record does not support this contention. The Ville Platte facility, and whatever problems it was experiencing, were not the basis of the NCATE denial of reaccreditation. No mention of the Ville Platte center was made by Dr. Stone to the Board and his concurrence was not predicated on the situation.
We find that Dr. Hicks failed to prove the essential element of malice and therefore the jury's verdict against Dr. Stone finding defamation was manifestly erroneous and should be reversed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the foregoing reasons, the judgments of the trial court refusing to grant the plaintiff injunctive relief and granting the directed verdicts dismissing the defamation claim and the civil rights action under 42 U.S.C. 1983, et seq., against the Board and its members are affirmed. The judgment of the jury in favor of the appellant and against the defendant, Stone, in the sum of $5,000.00 for defamation is reversed and judgment is hereby rendered dismissing appellant's defamation claim against the defendant, Stone. All costs in the trial court and this court are to be paid by the appellant.
AFFIRMED IN PART, AND REVERSED AND RENDERED IN PART.