**Raymond S. ADAMS, Plaintiff,**

v.

**SCHOOL DISTRICT NO. 5 OF JACKSON COUNTY, OREGON, a public body corporate and political subdivision of the State of Oregon; and Donnea Medinger, Roger Busse, Becky Martin, Diane Mason, and Ted Loftus, each in their individual and official capacities as members of the Board of Directors, School District No. 5 of Jackson County, Defendants.**

**Civ. No. 87–6624–ME.**

United States District Court, D. Oregon.

Oct. 27, 1988.

James M. Brown, Enfield, Guimond & Brown, Salem, Or., for plaintiff.

Chrys A. Martin, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendants.

## OPINION

FRYE, Judge:

The matter before the court is the motion of defendants, School District No. 5 of Jackson County, Oregon, and Donnea Medinger, Roger Busse, Becky Martin, Diane Mason and Ted Loftus as members of the Board of Directors, School District No. 5 of Jackson County, for partial summary judgment against plaintiff, Raymond S. Adams, on Adams' federal constitutional claims.

## UNDISPUTED FACTS

Adams has been a public school administrator since 1963. The Ashland School District employed Adams as a school superintendent beginning July 1, 1984 under a three-year contract. On April 14, 1986, the contract was amended and extended to June 30, 1988. The contract provides that the school board may terminate the contract if Adams fails "to perform in a reasonable manner the duties undertaken."

On February 2, 1987, eighty percent of the members of the Ashland Education Association (AEA) gave Adams a "no confidence" vote. The AEA notified the school board of its action on February 3, 1987.

The school board reviewed Adams' job performance in March, 1987 and in October, 1987. Adams' job performance was rated negatively. The school board gave Adams a copy of each document generated. On March 14, 1987, the school board voted not to extend Adams' contract beyond June 30, 1988. On October 19, 1987, board chair, Donnea Medinger, stated that the school board no longer had "confidence" in Adams and sought an intermediary to "encourage" Adams to resign. In early November, 1987, Medinger and school board member Roger Busse told Adams that he should have his lawyer talk to the school district lawyer about his continuing employment.

On November 19, 1987, the school board told Adams that it had tentatively voted to terminate his contract, that he was relieved of all of his duties with pay as of 4:00 p.m. November 20, and that it would take final action relative to termination on December 10, 1987 unless prior to that time Adams requested a hearing.

On November 19, 1987, the school board sent Adams a letter advising him that its decision was based on the two job performance evaluations made in 1987. The school board also told Adams that he had twenty days to request a hearing.

On November 20, 1987, two area newspapers ran articles stating that the school board had fired Adams.

Adams requested a hearing, specifications of the charges against him, and designation of an independent hearing officer. The district refused Adams' request for an independent hearing officer. On December 15, 1987, the school board convened a hearing. Adams appeared with counsel and presented testimony. After the hearing, the board voted to terminate Adams.

At the conclusion of proceedings before the school board, board chair Medinger made the following statement regarding Adams' performance, which statements were published in *The Daily Tidings*, an Ashland, Oregon newspaper of general circulation:

'I feel confident I could highlight specific instances that would illustrate why I have felt this way,' said Medinger adding that Adams' attitude at times was hostile and patronizing.... 'I think to put it crudely, we needn't accept crumbs, but that we are all aiming for the very best,' she added.

After Adams' termination, he applied for the position of school superintendent with school districts in Pendleton, Newberg, Ontario, Hillsboro and Yamhill. Adams was not granted an interview in any of the districts. Written notes by screening committee members in each district refer to Adams' "dismissal" in Ashland as a negative factor.

## CONTENTIONS OF THE PARTIES

Adams contends that the school board members made up their minds to dismiss him before they held a hearing. Adams lists the following reasons for this contention: 1) a majority of the board had served less than six months when Adams was terminated; 2) two of the board members, Medinger and Loftus, had a private business relationship; 3) before being appointed to the school board in September, 1987, board member Martin "facilitated" meetings of an unofficial school activist group, and she participated in preparing a letter to the district that was critical of Adams'

performance as superintendent; and 4) before becoming a board member, Mason attended meetings of the unofficial group organized by Martin.

The school board denies these contentions and moves the court for an order of summary judgment in its favor and against Adams on Adams' constitutional claims. The school board also moves the court for judgment in its favor on its defense of qualified immunity.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* 477 U.S. at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sanko-*

*vich v. Life Ins. Co. of N. Am.*, 638 F.2d 136 (9th Cir.1981).

## DISCUSSION AND RULING

### A. *Property Interest*

■ The parties agree that Adams had a property interest in continued employment until June 30, 1988. Adams argues that the school board did not give him due process because 1) it did not specify the charges against him; 2) the school board's decision to terminate him was made before the hearing; and 3) that there were improprieties in the school board's conduct of the hearing. The school district contends that all procedural due process requirements were met.

As the party moving for summary judgment, the school district has the burden of establishing the absence of a material issue of fact. This burden may be discharged by proving there is an absence of evidence to support Adams' case. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Adams "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

The court must determine whether the pre-termination procedures provided by the school district satisfied due process requirements. In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* 470 U.S. at 546, 105 S.Ct. at 1495. On the issue of notice, the court in *Matthews v. Harney County School Dist.*, 819 F.2d 889, 892 (9th Cir.1987), read *Loudermill* to require, in advance of any pre-termination hearing, 1) notice to the employee as to the pendency or contemplation of a dismissal action, and 2) notice as to the charges and evidence which gave rise to that concern.

In March, 1987, and again in October, 1987, Adams received negative performance evaluations. On November 19, 1987,

Adams was given oral and written notice that, based on his evaluations, the school board had tentatively voted to terminate his employment contract. The school district then notified Adams of his right to a hearing before the school district took final action relative to termination.

Undisputably, Adams had notice that the school district was contemplating dismissing him. Furthermore, the evaluations of Adams' performance are detailed and provided notice to him of the "charges" against him and an explanation of the "evidence" which would be presented at a termination hearing.

The school board conducted a hearing on December 15, 1987, at which time Adams appeared with counsel and presented the testimony of witnesses on his behalf. At the conclusion of the hearing, the school board voted to terminate Adams' employment.

Adams contends that the hearing was not a meaningful hearing so as to satisfy due process requirements because the school board had already decided to terminate him before the hearing. However, due process only requires that an employee have a chance to present his side of the story. *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495. The school district provided Adams the opportunity to present his side of the story.

Adams also alleges improprieties in the school board's conduct of the hearing, e.g. absence of an independent hearing officer rather than the school board itself, absence of a recording of the hearing, and failure to prepare findings of fact.

The school board's prior participation in evaluating Adams did not disqualify it from deciding whether Adams should be terminated. A school board acts with the presumption of honesty and integrity. *Hortonville Joint School Dist. v. Hortonville Educ. Ass'n*, 426 U.S. 482, 496, 96 S.Ct. 2308, 2315, 49 L.Ed.2d 1 (1976). The absence of a recording and the failure to prepare findings of fact are procedures not required by *Loudermill*.

The court concludes that the school district provided Adams with the due process

procedure required by the court in *Louder-mill*. Defendants are entitled to summary judgment on Adams' claim of the deprivation of a property interest without due process of law.

### B. *Liberty Interest*

■ Adams contends that the publicity surrounding his dismissal has deprived him of a liberty interest in his occupation. Adams asserts that his suspension from employment on November 19, 1987 was publicly portrayed as a "dismissal" prior to any hearing. Following the school board meeting of December 15, 1987, the board chair publicly described Adams as hostile and patronizing, and said, with respect to his performance, "we needn't accept crumbs." Adams explains that he has sought employment with six school districts, but has not received interviews because his applications were examined by screening committees which noted in each instance his "dismissal" from the Ashland School District.

The school district argues that Adams has not been deprived of a liberty interest, and even if he had been, the hearing provided him with adequate due process protection. The court in *Bollow v. Fed. Reserve Bank*, 650 F.2d 1093, 1100–01 (9th Cir.1981), summarized the law on liberty interest:

> The liberty protected by the due process clause of the fifth and fourteenth amendments encompasses an individual's freedom to work and earn a living. Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name. *Board of Regents v. Roth, supra*, 408 U.S. [564] at 573 & n. 12, 92 S.Ct. [2701] at 2707 & n. 12 [33 L.Ed.2d 548 (1972)]; e.g., *Goss v. Lopez*, 419 U.S. 565, 575, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to "stigmatize" or otherwise burden the individual so that he is not able to take advantage of other employment opportunities. *Board of Regents v.*

*Roth, supra*, 408 U.S. at 573–74, 92 S.Ct. at 2707–08; *see Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (charges reflecting on 'good name, reputation, honor, and integrity').

This court has described the stigma that infringes liberty interests as that which '*seriously* damages a person's reputation or *significantly* forecloses his freedom to take advantage of other employment opportunities....' *Jablon v. Trustees of California State Colleges*, 482 F.2d 997, 1000 (9th Cir.1973) (emphasis added), *cert. denied*, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Subsequent panels have set the boundary of liberty interests at accusations of 'moral turpitude,' such as dishonesty or immorality—i.e., charges that do not reach this level of severity do not infringe constitutional liberty interests. *See, e.g., Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–66 (9th Cir.1976); *Gray v. Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir.1975). *See also Board of Regents v. Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707. Thus, in both *Stretten* and *Gray* it was held that dismissal for reasons of incompetence and inability to 'get along' with co-workers did not infringe liberty interests. 537 F.2d at 366; 520 F.2d at 806; *accord Weathers v. West Yuma County School District R–J–1*, 530 F.2d 1335 (10th Cir.1976).

The Ninth Circuit has consistently required allegations of moral turpitude in order to state the infringement of a liberty interest. The school board chair described Adams as hostile and patronizing, and stated that "we need not accept crumbs." These are not allegations of moral turpitude. These statements relate to Adams' ability to perform his job and get along with others. Adams has presented no facts implicating a liberty interest entitled to due process protection.

### C. *Qualified Immunity*

Since summary judgment is appropriate on the defendant's property and liberty

claims, the court need not address the issue of whether school board members are protected by the doctrine of qualified immunity.