**CREST STREET COMMUNITY COUNCIL, INC., Residents of Crest Street Community, and Save Our Church and Community Committee, Plaintiffs,**

v.

**NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, North Carolina Board of Transportation and William R. Roberson, as Secretary of the North Carolina Department of Transportation and Chairman of the North Carolina Board of Transportation, Defendants.**

No. C–83–1239–D.

United States District Court,
M.D. North Carolina,
Durham Division.

Nov. 29, 1984.

Michael D. Calhoun and Alice A. Ratliff, N.C. Legal Assistance Program, Durham, N.C., for plaintiffs.

Rufus L. Edmisten, Atty. Gen., N.C., and James B. Richmond, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This is an action to recover attorney's fees incurred in previous administrative and judicial proceedings either between or involving the parties to this action. Before the Court are defendants' Motion to Dismiss (August 8, 1984) for failure to state a claim and for judgment on the pleadings, Fed.R.Civ.P. 12(b) & (c), and plaintiffs' Motion for Summary Judgment (August 8, 1984) pursuant to Rule 56, Fed.R.Civ.P. Inasmuch as matters outside the pleadings were presented and not excluded, the Court will treat and dispose of defendants' Rule 12 motion as one for summary judgment pursuant to Rule 12(b)(6) & (c), Fed.R. Civ.P. The parties submitted extensive briefs and documentary evidence and were heard in oral argument on November 1, 1984.

## FACTS

The plaintiffs are organizations representing residents of Crest Street community, a cohesive, predominately black, low-income neighborhood in Durham, North Carolina. For quite some time the City of Durham had requested, and defendant North Carolina Department of Transportation (NCDOT) had planned, extension of a highway known as the East-West Freeway through, and with a major interchange in, the midst of the Crest Street community. As proposed by NCDOT in 1976, the highway extension would displace much of the community.

In March 1977, the North Carolina Legal Assistance Program was retained to represent residents of the Crest Street communi-

ty concerning efforts against the East-West Freeway. In September 1978, plaintiffs Residents of Crest Street Community and Save Our Church and Community Committee, through counsel, filed an Administrative Complaint with the United States Department of Transportation (USDOT) seeking an investigation of the practices of NCDOT and the Federal Highway Administration for compliance with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and 49 C.F.R. § 21.[1] Title VI provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Part 21 of the Code of Federal Regulations was promulgated to effectuate the provisions of Title VI in any program or activity receiving federal money from the USDOT. 49 C.F.R. § 21.1. The Administrative Complaint sought prohibition of further planning or construction of the freeway by NCDOT and rejection by USDOT of the NCDOT Environmental Impact Statement until the freeway project was brought into compliance with applicable laws. Affidavit of Willie Patterson, Exhibit A (August 8, 1984).

USDOT conducted a field investigation into the freeway proposals and the allegations of the Administrative Complaint. On February 20, 1980, the USDOT Director of the Office of Civil Rights informed NCDOT of its preliminary judgment finding reasonable cause to believe that construction ac-

cording to the NCDOT proposal would constitute a prima facie violation of Title VI, in particular, section 21.5(b)(3), 49 C.F.R., which provides:

In determining the site or location of facilities, a recipient or applicant may not make selections with the purpose or effect of excluding persons from, denying them the benefits of, or subjecting them to discrimination under any program to which this regulation applies, on the grounds of race, color, or national origin; or with the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the Act of this part.

Patterson Affidavit, Exhibit B. This belief led the complainants, NCDOT, and the City of Durham into extensive negotiations towards conciliation of their differences.

In February 1982, plaintiff Crest Street Community Council, Inc. (Council), the City of Durham, and NCDOT reached a preliminary agreement for the freeway design, relocation assistance benefits, and other assistance in mitigation of the construction. Negotiations for a final mitigation plan toward ultimate resolution of all issues raised by the Administrative Complaint continued.

In August 1982, NCDOT moved to dissolve a 1973 injunction in *ECOS, Inc. v. Brinegar*, C–352–D–72 (M.D.N.C. February 20, 1973), which had enjoined construction of the freeway.[2] The Council and Willie Patterson, a resident of the Crest Street community, moved to intervene in *ECOS* on October 15, 1982. Patterson Affidavit, Exhibit C. The intervention motion was

---

**1.** In addition to alleging that the freeway proposal was violative of Title VI, the Administrative Complaint also challenged the proposal under provisions of the National Environmental Policy Act, 42 U.S.C. § 4331, the Federal-Aid Highway Act, 23 U.S.C. § 109, and Title VIII of the Civil Rights Act of 1968 (fair housing), 42 U.S.C. § 3601 et seq.

**2.** Plaintiffs in the *ECOS* action were ECOS, Inc. (a nonprofit, educational, ecological corporation), an association of Duke University students and some of its members, and two Durham residents. The defendants were state and

federal transportation officials and a construction company. The action had alleged violations of the public hearing requirement and the preservation of parkland requirements of the Federal-Aid Highway Act, 23 U.S.C. §§ 128 & 138, the parkland preservation policy of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f), and the National Environmental Policy Act of 1969, 42 U.S.C. § 4332. The injunction enjoined steps toward construction of a particular section of the proposed freeway until full compliance with the statutes allegedly violated had been achieved.

never ruled on, but the applicants for intervention were parties to a December 14, 1982 Consent Judgment dissolving the injunction and dismissing the *ECOS* action. The Consent Judgment provided, *inter alia*, that the state highway defendants and applicants for intervention had

> resolved the things and matters in controversy between them by agreement adopted by the North Carolina Board of Transportation on November 19, 1982. The plaintiffs and applicants for intervention do not or no longer oppose the State defendants' motion to dissolve the injunction and do not wish to prosecute this action any further except that the applicants for intervention explicitly reserve the right to pursue all claims in their application for intervention in the event said agreement is not fully implemented, and in addition reserve their claim for attorney fees against the State defendants and the North Carolina Department of Transportation and the plaintiffs reserve their right to pursue all claims relating to the section of expressway proposed to be constructed between U.S. Highway 15–501 and Interstate 85.

Patterson Affidavit, Exhibit F, ¶ 8.

On December 15, 1982, the day following the filing of the Consent Judgment, the Council, NCDOT, and the City of Durham executed the Final Mitigation Plan (Plan). The Plan sets out in a comprehensive fashion efforts to be made by the City and NCDOT to mitigate the detrimental impact of the freeway on the Crest Street community. Plaintiffs contend that under the terms of the Plan, they were accorded very substantial relief.[3] First, a new community site will be developed in the same area and will allow the residents to remain intact as a community. Second, the defendants moved the proposed highway right-of-way and modified an interchange so as to preserve the community church and park. Plaintiffs state that defendants estimated the cost of implementing their major direct

responsibilities under the Plan to be $3,072,000. Brief in Support of Plaintiffs' Motion for Summary Judgment at 8 (August 8, 1984).

In August 1983, plaintiffs' counsel sent defendants a request for attorney's fees with a detailed listing of hours, expenses, hourly rates for various personnel, and notice of intent to seek an upward adjustment if court action became necessary. NCDOT denied liability for any fees, and plaintiffs filed this action on November 30, 1983.

## DISCUSSION

The Civil Rights Attorney's Fees Awards Act of 1976, amending 42 U.S.C. § 1988, in pertinent part, provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of [the Education Amendments of 1972] or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost.

In broad terms, the issue in this case is whether plaintiffs, are prevailing parties within the meaning or scope of section 1988. More specifically, the question before the Court is whether section 1988 authorizes an award of fees for the administrative enforcement of Title VI.

■■■ Defendants contend that the plaintiffs are not entitled to relief because (1) the eleventh amendment shields defendants from an award, (2) plaintiffs failed to exhaust administrative remedies, and (3) section 1988 does not support an independent cause of action. The eleventh amendment does not preclude an award under section 1988 which would be paid out of a state treasury. Congress has plenary power to set aside states' immunity from retroactive relief in order to enforce the fourteenth amendment. *Fitzpatrick v. Bitzer,*

---

**3.** Apparently, plaintiffs are quite satisfied with the highway plan in its present form for they have, somewhat ironically, intervened in *West Durham Lumber Co. v. North Carolina Depart-*  *ment of Transportation,* C–84–234–D (M.D.N.C. July 6, 1984) (action to enjoin construction) on the side of the state, local, and federal defendants in support of the proposed highway.

427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). When Congress passed section 1988, "it undoubtedly intended to ... authorize fee awards payable by States." *Hutto v. Finney,* 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522, 536 (1978). *Hutto* rejects the argument that section 1988 is insufficient to overcome the eleventh amendment immunity. *Maher v. Gagne,* 448 U.S. 122, 131–32, 100 S.Ct. 2570, 2575–76, 65 L.Ed.2d 653, 662–63 (1980).

■ Defendants' suggestion that plaintiffs must administratively exhaust their claim for fees before proceeding in this Court is also without merit. First, Title VI does not require exhaustion. *Chowdhury v. Reading Hospital and Medical Center,* 677 F.2d 317 (3d Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 3569, 77 L.Ed.2d 1411 (1983). Second, the administrative procedures of part 21, 49 C.F.R., for hearings and judicial review are available to *recipients* of federal funds to challenge an adverse decision to cut off funding, not complainants like plaintiffs. And third, under section 1988 only a court, as opposed to an administrative agency, may determine and award fees.[4]

■ The Court has considered whether this claim for fees should have been brought as a motion in the cause of the *ECOS* action. There is authority that section 1988 does not support an independent action. *E.g., Horacek v. Thone,* 710 F.2d 496 (8th Cir.1983). However, such authority is premised on *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), a case decided prior to the 1976 statutory amendment which authorized attorney's fees.[5] The amending language does not on its face deviate from this holding, but the Supreme Court has recognized that section 1988 raises issues "uniquely separable" and "collateral" to the main cause of action, and that flexibility in the manner of pursuing section 1988 fees exists. *White v. Department of Employment Security,* 455 U.S. 445, 451–52, 102 S.Ct. 1162, 1166–67, 71 L.Ed.2d 325, 331 (1982) (Rule 59(e), Fed.R.Civ.P., does not apply to postjudgment fee requests, and district courts may adopt local rules establishing timeliness standards for the filing of attorney's fees claims).[6]

Plaintiffs never formally intervened in *ECOS.* During oral argument counsel stated that the presiding judge in *ECOS* did not rule on any matter concerning their claims and, therefore, would not be in a position of familiarity with the efforts for which plaintiffs now seek fees. The overwhelming majority of the fees sought were incurred in the context of the administrative proceedings or pursuant to the USDOT findings. While the Court may ultimately conclude that the fees are not recoverable because they were not incurred in the context of a judicial proceeding, to dismiss the case merely because of its nature as an action instituted independent of prior proceedings would without justification evade the real issue at hand—the propriety of awarding fees under section 1988 for Title VI administrative proceedings.

Plaintiffs' fee request spans five years and eight months, from March 1977 to December 1982, and totals 1,261.25 hours. All but thirty-seven hours, or approximately three percent of the total request, were incurred prior to the motion to intervene filed in *ECOS.* Counsel documented seven hours in preparation of the intervention

---

**4.** Ironically, an exhaustion of administrative remedies requirement would actually further plaintiffs' fee request rather than bar it as defendants have suggested. *See infra* pp. 264–265.

**5.** In *Moor v. County of Alameda,* the Supreme Court ruled that section 1988, then free from any attorney's fee provision, does not create an action but only compliments various federal civil rights causes of action by authorizing federal courts to look to principles of state law when the federal law is unsuited or insufficient to furnish suitable remedies. 411 U.S. at 702–03, 93 S.Ct. at 1792–93, 36 L.Ed.2d at 606.

**6.** Local Rule 210, effective January 1, 1985, provides that the parties to an action shall attempt to agree on a statutory attorney's fees award, and if they are unable to agree may move within 90 days of final judgment that the Court enter an award.

motion and proposed complaint and two and one-half hours preparing the Consent Judgment. The remaining twenty-seven and one-half hours involved negotiations towards, and review of, the Final Mitigation Plan. Plaintiffs contend that the fees incurred prior to the intervention motion are compensable irrespective of the recoverability of fees for administrative work because the vast majority of counsel's efforts were necessary for the *ECOS* proceeding notwithstanding the existence of a prior administrative proceeding. The Court cannot accept this contention. The motion for intervention and proposed complaint are short and uncomplicated pleadings. Plaintiffs' motion for intervention was never tested and except for the Consent Judgment, they had no other participation in *ECOS*. It is true that the intervening twenty-seven and one-half hours of negotiations and review of the Plan would have been much greater had not the administrative matters preceded. However, to retroactively declare that efforts done over a five year period would have been required in the course of litigation later initiated would result in a highly speculative, uncertain, and unfairly surprising award of fees. Thus, the fee request for 1,224.25 hours incurred prior to any action by plaintiffs in a judicial forum may not be piggybacked onto the *ECOS* related hours but may be granted only to the extent, if any, that section 1988 applies to administrative proceedings.

This is a question not yet answered by the United States Supreme Court or the Court of Appeals for the Fourth Circuit. *See Cain v. Virginia,* 582 F.Supp. 531 (W.D.Va.1984) (Fourth Circuit has not decided whether section 1988 permits fees in optional administrative hearings or prior state judicial proceedings not an integral part of the federal remedy). There is, however, persuasive authority from other circuit courts of appeals holding that section 1988 does not authorize fees for actions or proceedings other than judicial in nature.

*Webb v. Board of Education,* 715 F.2d 254 (6th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 1906, 80 L.Ed.2d 456 (1984); *Latino Project, Inc. v. City of Camden,* 701 F.2d 262 (3d Cir.1983); *Redd v. Lambert,* 674 F.2d 1032 (5th Cir.1982); *Blow v. Lascaris,* 668 F.2d 670, 671 (2d Cir.), *cert. denied,* 459 U.S. 914, 103 S.Ct. 225, 74 L.Ed.2d 179 (1982).

In *Latino Project, Inc. v. City of Camden,* 701 F.2d 262, the plaintiff filed an administrative complaint with the Department of Housing and Urban Development (HUD) challenging the use of federal housing funds under Title V1. HUD did not find a violation but the defendant later revised its housing proposals in such a way which led the plaintiff to believe it had prevailed in the administrative Title VI efforts. As a result, it filed a section 1988 action without having filed a complaint on the merits.

The Third Circuit began its review of the case, as this Court must, with the words of the statute[7] and found the phrase "civil action or proceeding" subject to different interpretations.

> Despite the literal ambiguity of the words "civil action or proceeding", the statutory context of those words indicates that Congress intended section 1988 to authorize an award of attorney's fees only to a party who substantially prevails on a civil rights claim in a lawsuit. Specifically, section 1988 provides that "in any civil action or proceeding ... the *court* ... may allow reasonable attorney's fees." (emphasis added). Congress' use of the term "court" within the same sentence that contains the words "civil action or proceeding" leads us to believe that Congress had in mind only a lawsuit when it used those words.

*Latino Project, Inc. v. City of Camden,* 701 F.2d at 264.

The Supreme Court has examined identical language from the attorney's fee provision of Title VII, 42 U.S.C. § 2000e–5(k), in

---

**7.** The starting point for interpreting a statute is the language of the statute itself. *Consumer Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766, 772 (1980).

*New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), and found that "proceeding" included state administrative and judicial proceedings.[8] Plaintiffs contend that *Carey* is precedent for adopting an identical interpretation under section 1988. There are, however, reasonable grounds upon which to distinguish the *Carey* holding from section 1988. *Carey* was not decided solely on an interpretation of the phrase "civil action or proceeding." The Supreme Court was persuaded only after examining the history of section 2000e–5(k), 42 U.S.C., other provisions of Title VII, and the nature of the congressionally mandated enforcement mechanism of Title VII. *New York Gaslight Club, Inc. v. Carey,* 447 U.S. at 61–62, 100 S.Ct. at 2029–2030, 64 L.Ed.2d at 732–33; *see Webb v. Board of Education,* 715 F.2d 254 (*Carey* does not control issue under section 1988; "action or proceeding" is ambiguous).

The legislative history also invites differing analyses. As stated by the Senate Committee on the Judiciary, the purpose of section 1988 "is to remedy anomalous gaps in our civil rights laws created by ... *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 [95 S.Ct. 1612, 44 L.Ed.2d 141] (1975) and to achieve consistency in our civil rights laws," and "it is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act." S.Rep. No. 1011, 94th Cong., 2d Sess. 1, 4 *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5909, 5912. However, the same Senate Report more strongly supports the opposite conclusion because the notion that attorney's fees are available for

services rendered *in court* permeates the legislative history.[9] *Webb v. Board of Education,* 715 F.2d at 258; *Latino Project, Inc. v. City of Camden,* 701 F.2d at 264; *Blow v. Lascaris,* 668 F.2d at 671.

Title VII requires that claimants timely seek prelitigation administrative relief either from authorized state or local agencies or from the EEOC. 42 U.S.C. § 2000e–5(c) & (e). In contrast, neither Title VI nor any of the other laws encompassed by section 1988 require exhaustion of administrative remedies. *Webb v. Board of Education,* 715 F.2d at 257. While administrative remedies are available under Title VI, unlike Title VII there is no congressional policy favoring exhaustion of any of the laws listed in section 1988. This is a critical distinction between *Carey* and the instant case and justifies limiting the effect of *Carey* to its facts.

■■■ Plaintiffs argue that denial of fees for administrative proceedings will render such proceedings obsolete. Given attorneys' obligation to serve the best interests of their clients, proceedings such as those invoked here surely would not become things of the past. Moreover, issues in litigation which are suited for administrative resolution may be directed to an administrative agency by a presiding court. *See NAACP v. Wilmington Medical Center, Inc.,* 689 F.2d 1161, 1163 (3d Cir.1982), *cert. denied,* 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 390 (1983) (district court temporarily stayed action and ordered HEW investigation). On the other hand, construction of section 1988 to include fees for administrative related events could open the door to fee requests for an array of

**8.** Fees for federal administrative proceedings under Title VII, such as those before the EEOC, were not at issue in *Carey,* but the Supreme Court noted that several Courts of Appeals, including the Fourth Circuit in *Johnson v. United States,* 554 F.2d 632 (4th Cir.1977), had upheld awards for work done in required administrative proceedings. *New York Gaslight Club, Inc. v. Carey,* 447 U.S. at 62 n. 2, 100 S.Ct. at 2030, n. 2, 64 L.Ed.2d at 733 n. 2.

**9.** For example,

[Section 1988] is designed to allow courts the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts.... In many cases arising under our civil rights laws, the citizen who must sue has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights ... [they] must have the opportunity to recover what it costs them to vindicate these rights in court.

S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5909–10.

nonjudicial proceedings which are not required or are not integral parts of one's federal court remedy. Administrative proceedings under Title VI and Title IX of the Education Amendments of 1972, which prohibit discrimination by recipients of federal funding, seem particularly unsuited for an award of fees because individuals, beyond filing an administrative complaint, have little input or control into the decisional process. This puts them at a disadvantage and likewise would make a subsequent court decision of reasonable fees, for matters which by regulation are principally between the federal government and the funding recipient, much more difficult. All things considered, while section 1988 was patterned after the counsel fee provisions of Title VII [10] and uses the familiar "courts or proceedings" phrase, its application cannot mirror Title VII because the rights accorded by Titles VI and VII are remedied in significantly different manners. The Court will, therefore, follow the persuasive authority of those appellate courts which have concluded that section 1988 does not authorize a fee award for work done in conjunction with administrative proceedings.[11] "[A] plaintiff who has not filed a civil complaint on the merits of a claim under one of the civil rights statutes enumerated in ... section 1988 is not entitled to attorney's fees ... even though he may have obtained substantial relief in administrative proceedings." *Latino Project, Inc. v. City of Camden,* 701 F.2d at 265.

■ Plaintiffs argue that because in September 1978 when they filed their administrative complaint "several courts" had held that administrative exhaustion was a prerequisite to a Title VI lawsuit, it was rea-

sonable for them to believe that an administrative complaint was mandatory. In *Cain v. Virginia,* 582 F.Supp. 531 (W.D. Va.1984), fees for state administrative and judicial work were allowed because of a federal district court decision that an employee allegedly denied due process must appeal an arbitration decision to state court before starting a federal court action. The pendency of that ruling justified the *Cain* plaintiff's state court actions even though the district court decision was later reversed. Counsel does not suggest that he made a calculated decision to file an administrative complaint rather than institute a lawsuit after having considered the optional or mandatory nature of part 21, 49 C.F.R. The Court recognizes that in September 1978, there was authority holding that exhaustion was necessary under Title VI. *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 158 (E.D.Pa.1977); *NAACP v. Wilmington Medical Center,* 426 F.Supp. 919 (D.Del.1977), *rev'd,* 599 F.2d 1247 (3d Cir.1979). However, it is well settled that the doctrine of exhaustion of administrative remedies does not apply where the particular agency lacks procedure for complainants to trigger and participate in the administrative process. *Rosado v. Wyman,* 397 U.S. 397, 406, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442, 452 (1970). While one *may,* as the Council did in 1978, file a complaint with the USDOT, filing does not initiate an adversary type proceeding involving the complainant nor is there any remedial provision for the complainant. 21 C.F.R. § 21.11. From that point forward, the complainant is not a mandatory party to the USDOT investigation nor to any

---

10. The Court recognizes that the standards for awarding fees under section 1988 are to be generally the same as in these model statutes. *Hensley v. Eckerhard,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40, 50 n. 7 (1983). However, the "standards" for fees refers the interpretation of who is a "prevailing party," not where their prevalence is entitled to statutory fees.

11. Plaintiff cites three cases which if followed would lead to a contrary result. One, *NAACP v. Wilmington Medical Center,* 689 F.2d 1161 (3d Cir.1982), *cert. denied,* 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983), was specifically rejected in *Latino Project, Inc.,* a subsequent Third Circuit case, as standing for the proposition that "action or proceeding" included administrative proceedings. The other two, *Ciechon v. City of Chicago,* 686 F.2d 511 (7th Cir. 1982) and *Brown v. Bathke,* 588 F.2d 634 (8th Cir.1978) are rejected because they ruled without addressing the crucial optional/mandatory distinction between Title VII and the laws encompassed by section 1988.

action or inaction taken with respect to the recipient of federal funds. The Supreme Court recognized the shortcomings of such an administrative format in *Cannon v. University of Chicago*, 441 U.S. 677, 706–07 n. 41, 99 S.Ct. 1946, 1962–63, n. 41, 60 L.Ed.2d 560, 581–82 n. 41 (1979), noting that exhaustion under Title IX is not appropriate because, as in Title VI, a complainant is not assured an investigation on the merits, participation in any investigation, or relief even if the government finds a violation. The permissive and limited nature of a complainant's role in the administrative enforcement mechanism illustrates, as it did in 1978,[12] that exhaustion is not required under Title VI.

■ Even though the Court finds that the administratively initiated work is not compensable under section 1988, the question remains whether any of the *ECOS* related work is compensable. A prevailing party is one who succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing the suit, *Hensley v. Eckerhart*, 461 U.S. 424, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983), and a consent judgment short of final adjudication may support an award of fees. *DeMier v. Gondles*, 676 F.2d 92, 93 (4th Cir.1982). In such circumstances,

> the court must focus on the condition that the fee claimant sought to change so as to gain a benefit or be relieved of a burden. With this condition as a benchmark, the inquiry then becomes "whether, as a quite practical matter the outcome, in whatever form it is realized, is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition."

*DeMier v. Gondles*, 676 F.2d at 93 (quoting *Bonnes v. Long*, 599 F.2d 1316, 1319 (4th Cir.1979), *cert. denied*, 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982)).

---

**12.** The regulations in effect in 1978 are not different in any manner relevant here from

■ Plaintiffs did not initiate the *ECOS* action and they were never allowed to intervene. Through intervention, they sought (1) an injunction prohibiting extension of the highway and (2) declaration that the defendants' practices violated Title VI and other laws. Patterson Affidavit, Exhibit C. They obtained neither. Furthermore, even if plaintiffs had been allowed to intervene, their opposition to dissolution of the injunction would not be entitled to fees because the *ECOS* injunction had only prohibited construction pending compliance with laws *other than Title VI*. The proposed highway was never judicially enjoined, at the behest of plaintiffs or anyone, on the ground that it would violate Title VI.

Although not set forth in the intervention motion and proposed complaint, it is obvious that the purpose of the attempted intervention was to prompt speedy execution of the Final Mitigation Plan. The Plan was executed the day following the Consent Judgment; however, the Consent Judgment recites that the state defendants and applicants for intervention had already resolved their differences by agreement adopted November 19, 1982. As a practical matter, there is no evidence that the *ECOS* fee efforts, limited to seven hours of preparing the intervention motion and two and one-half hours for drafting the Consent Judgment, significantly contributed to the execution of the Plan. The twenty-seven and one-half hours of final negotiations between these two events were preceded by many months and numerous hours of serious negotiations following the USDOT prima facie finding of a Title VI violation. Plaintiffs do not suggest that resolution of final details had become uncertain. Final settlement seemed imminent. Plaintiffs have not shown that their "participation" in *ECOS*, an action to which they were not parties, was even a catalyst to the Plan.

## CONCLUSION

The issue presented by this case is a difficult one. Without question the plain-

those currently in effect. 49 C.F.R. § 21 (1978).

tiffs' interests were well served by their counsel. Yet, the general rule in this country in the absence of specific legislative authority is that litigants bear their own costs. The argument that section 1988 is authority for fees incurred administratively as well as judicially is not an unreasonable one. However, in the absence of persuasive direction from Congress or controlling judicial authority and considering the nature of remedies afforded by Title VI and the other laws encompassed by section 1988, the Court concludes that the argument must fail.

IT IS, THEREFORE, ORDERED that defendants' motion to dismiss or for judgment on the pleadings be, and the same hereby is, GRANTED, and that plaintiffs' motion for summary judgment be, and the same hereby is, DENIED.

A Judgment will be entered accordingly.