**NEIGHBORHOOD ACTION COALITION, et al., Plaintiffs–Appellants,**

v.

**CITY OF CANTON, OHIO, et al., Defendants–Appellees.**

**No. 88–3450.**

United States Court of Appeals, Sixth Circuit.

July 27, 1989.

---

Edward L. Gilbert (argued), Edward L. Gilbert Co., LPA, Canton, Ohio, for plaintiffs-appellants.

Mariella Mestel, Safety Forces Adv., Office of the Canton Law Dept., William J. Hamann (argued), Office of the City Atty., Canton Law Dept., Canton, Ohio, for defendant-appellee City of Canton.

Lemuel R. Green, William S. Heichel, Canton, Ohio, for defendant-appellee The Store.

Lemuel R. Green, Canton, Ohio, for defendant-appellee Basim Rashid.

Before ENGEL, Chief Judge, JONES, Circuit Judge, and WOODS, District Judge.*

WOODS, District Judge:

On this appeal we review a district court's Order of Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, we affirm in part and reverse in part.

## I.

The Neighborhood Action Coalition (NAC) is an unincorporated association consisting of residents of the northeast section of Canton, Ohio, and organized for the purpose of fostering open housing. L.Q. Ellis, Mary Ellis, Carmine Altieri, and Myrna Jo Johnson are also residents of northeast

---

* The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

Canton. Together, with the NAC, they represent a class of at least twenty-five residents of northeast Canton who filed a complaint in the Northern District of Ohio against the City of Canton; The Store, a grocery store in the city; and Basim Rashid, lessee and owner of The Store.

In their complaint, appellants assert that the City of Canton receives federal funds from the Department of Housing and Urban Development and from United States Department of Treasury Block Grants. Appellants allege that the City has refused to invest these funds in the northeast region of the City (NAC area) in the same proportion it invests funds in other regions of the City. The complaint also asserts that the NAC area has been targeted as a transitional area and that the City of Canton purposefully allows the area to be taken over by disadvantaged minorities. To that end, the City has told white residents, including appellants, to move; has provided little or no police protection; has allowed a city park plagued by drug trafficking to remain open continuously without patrol or supervision; and has encouraged Basim Rashid to operate The Store, a business that allegedly sells or allows the sale of alcohol to minors and known alcoholics and allows them to consume the alcohol on the premises.

The appellants allege that they are injured by the defendants' acts; the neighborhood has become unsafe for themselves and their children, and the use and value of their real property has been substantially reduced. They allege that these injuries entitle them to relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq.; and the Civil Rights Act of 1866, 1870 and 1871, 42 U.S.C. §§ 1981, 1982, 1983. The complaint seeks injunctive relief in the form of a Court Order that prohibits the municipality from providing services in a racially discriminatory manner, requires the municipality to provide police protection to the NAC area that is equal to the protection provided other Canton neighborhoods; and obligates the City to revoke The Store's liquor license. The complaint also seeks compensatory and punitive damages.

All three defendants, the City of Canton, Rashid, and The Store, filed motions to dismiss. On April 14, 1988, the district court granted the motions and dismissed all three defendants. The appellants appeal only the district court's dismissal of the City of Canton. Accordingly, only those portions of the district court's order of dismissal that affect the City will be addressed. In reviewing those portions of the district court's order, we must decide if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For the purposes of a motion to dismiss, the allegations in the complaint are taken to be true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## II.

### A.

Appellants first challenge the trial court's dismissal of their Title VI claim. Title VI prohibits discrimination in any program receiving federal financial assistance:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. Title VI was intended to "halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution." *Regents of the University of California v. Bakke,* 438 U.S. 265, 284, 98 S.Ct. 2733, 2745, 57 L.Ed.2d 750 (1978) (Powell, J.). To achieve these ends, Congress explicitly provided for an administrative enforcement mechanism, which allows the federal funding agency to attempt to secure compliance and, failing that, to terminate the violator's federal funding. 42 U.S.C. § 2000d–1.

In the present case, the appellants did not invoke the elaborate enforcement mechanism of § 2000d–1 prior to pursuing their private cause of action in federal court. The district court found this failure to exhaust administrative remedies to be a procedural bar to the Title VI cause of action and dismissed it from the suit. The court based its ruling on *Santiago v. Philadelphia,* 435 F.Supp. 136 (E.D.Pa.1977), and *Dupree v. Chattanooga,* 362 F.Supp. 1136 (E.D.Tenn.1973). Both cases require plaintiffs to exhaust their administrative remedies prior to bringing a Title VI claim before a federal court.

Since these cases were decided, however, the Supreme Court rendered its decision in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), which, after acknowledging that Title IX "was patterned after Title VI", held that Title IX, like Title VI, affords a private cause of action. *Id.* at 694, 717, 99 S.Ct. at 1956, 1968. The Court also noted, although in dicta, that "we are not persuaded that individual suits are inappropriate in advance of exhaustion of remedies. Because the individual complainants cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time, it makes little sense to require exhaustion." *Id.* at 706–08 n. 41, 99 S.Ct. at 1962–64 n. 41.

■ Courts interpreting the *Cannon* decision have explicitly applied it to Title VI claims and squarely hold that litigants need not exhaust their administrative remedies prior to bringing a Title VI claim in federal court. *Doe on Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 426 (7th Cir.1986); *Chowdhury v. Reading Hospital and Medical Center,* 677 F.2d 317, 320–22 (3d Cir.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1411 (1983); *Crest Street Community Council v. North Carolina Department of Transportation,* 598 F.Supp. 258, 265–66 (M.D.N.C.1984), *rev'd on other grounds,* 769 F.2d 1025 (4th Cir.1985), *rev'd,* 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986); *Concerned Tenants Association v. Indian Trails Apartments,* 496 F.Supp. 522, 527 (N.D.Ill.1980). We agree with the reasoning of these courts.

Like Title IX, Title VI does not provide a mechanism by which the class protected by the statute can actively participate in the administrative process. Under such circumstances, requiring litigants to exhaust their administrative remedies would impose an undue hardship and delay upon their attempts to vindicate their rights. *Rosado v. Wyman,* 397 U.S. 397, 405–07, 90 S.Ct. 1207, 1214–15, 25 L.Ed.2d 442 (1970). Moreover, as the Supreme Court noted in *Cannon,* an administrative finding of a Title VI violation may not include relief for the claimant. 441 U.S. at 706 n. 40, 99 S.Ct. at 1962 n. 40. Accordingly, we hold that Title VI litigants need not exhaust their administrative remedies before pursuing their private cause of action in federal court. Thus, the district court's dismissal of the appellant's Title VI claim must be reversed.

Appellee contends that the district court's ruling should nevertheless be affirmed because Title VI claims do not permit a private cause of action for monetary damages and plaintiff's complaint, although requesting equitable relief in broad generalities, is really seeking monetary damages.

■ Whether Title VI remedies are limited to equitable relief is not as clearly established as appellee contends. In *Guardians Association v. Civil Service Commission of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), Justice White concluded that "compensatory relief, or other relief based on past violations of the conditions attached to the use of the federal funds, is not available as a private remedy for Title VI actions not involving intentional discrimination." *Id.* at 602–03, 103 S.Ct. at 3232–33 (White, J.). This statement, however, earned the concurrence of only one other justice. *See* 463 U.S. at 612, 103 S.Ct. at 3237 (Rehnquist, J., concurring). Several lower courts have addressed the issue since the Supreme Court's decision in *Guardians Association* and have agreed with Justice White's opinion. *See, e.g., Davis v. Spanish Coalition for Jobs, Inc.,*

676 F.Supp. 171 (N.D.Ill.1988); *Storey v. Board of Regents of University of Wisconsin System,* 604 F.Supp. 1200 (W.D.Wis. 1985). The Supreme Court, however, has not yet resolved the issue, *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 630–31 n. 9, 104 S.Ct. 1248, 1252–53 n. 9, 79 L.Ed.2d 568 (1984), and we need not address it. Appellants' claim seeks both equitable and monetary relief and, as such, it is sufficient to withstand a motion to dismiss.

### B.

The district court dismissed appellants' claim under the Civil Rights Act of 1870, 42 U.S.C. § 1981, because the appellants had failed to allege a colorable claim under the Fair Housing Act, Title VI, or any other law of the United States. Because the appellants did allege a viable claim under Title VI, their claim under 42 U.S.C. § 1981 is also reinstated.

### C.

■ Finally, appellants challenge the district court's dismissal of their cause of action under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The district court dismissed this claim on the basis that § 1983 claims can be brought only against a "person" and a municipality is not a "person" within the terms of the statute. The trial court relied upon *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which, as to the issue of municipal liability, has been expressly overruled by the Supreme Court in *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* the Supreme Court stated: "Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Id.* at 690, 98 S.Ct. at 2035 (emphasis in original). Accordingly, the lower court's decision must be reversed on this issue.

The City asserts that the trial court's ruling should be upheld nevertheless because the error was harmless. The City contends that the dismissal of the § 1983 claim was proper because the NAC lacks associational standing and failed to assert the violation of a constitutional right.

As to the claim that the NAC lacks associational standing, the Supreme Court recapitulated its test for association standing in *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986):

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 282, 106 S.Ct. at 2529.

■ The City contends that the appellants lack standing to sue in their own right because they do not state with any particularity the injury they sustained. In *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), the Court held that standing to sue requires a showing of personal injury which is fairly traceable to the defendant's illegal conduct and which is likely to be addressed by judicial relief. Moreover, this Circuit requires that plaintiffs who represent a class "allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Jaimes v. Toledo Metropolitan Housing Authority,* 758 F.2d 1086, 1093 (6th Cir.1985). In the present case, appellants allege that the City, as a result of a discriminatory animus, provides municipal services and federal funds to racially identifiable neighborhoods in a substantially inferior quality and quantity than the services provided to other areas of Canton. As a result of such actions, appellants claim that they have been injured by experiencing little or no police response to their calls, the deterioration of the neighborhood

and their property values, the existence of a business in their neighborhood that openly sells alcohol to minors, and the presence of unsavory individuals around their homes. Such injuries, if proven, are personal injuries affecting their property rights, are arguably traceable to the City's alleged racial policy, and could be addressed by a judicial order enjoining any racially disparate spending of funds or providing of services. Therefore, the appellants have standing to sue in their own right.

■ Moreover, the second aspect of the test for associational standing is met. The NAC was organized for the purpose of fostering open housing in the City of Canton. Thus, the interests it seeks to protect in this lawsuit are germane to its purpose.

■ As to the third requirement, that neither the claim asserted nor the relief requested require participation in the lawsuit by individual members, appellee contends that the appellants' claims for compensatory damages would require evaluating separately the individual circumstances of each member of the NAC. Appellee is correct. In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court held that an organization of construction firms could not seek damages for profits lost because the injuries were particular to each individual and would require individualized proof. *Id.* at 515–16, 95 S.Ct. at 2213–14. Like *Warth*, the diminished value of each plaintiff's property as a result of the City's alleged conduct would require individualized proof. Accordingly, the NAC lacks standing to obtain compensatory relief on behalf of each of the individual plaintiffs. The complaint, however, also seeks injunctive relief, which would not require participation by the individual members because any injunctive relief granted would inure to the benefit of all members of the association actually injured. *Brock,* 477 U.S. at 288, 106 S.Ct. at 2531 (quoting *Warth,* 422 U.S. at 515, 95 S.Ct. at 2213). Therefore, the NAC does have standing to obtain injunctive relief.

■ The City's second reason for asserting that the district court's dismissal of the § 1983 claim was harmless error is that the appellants failed to express which federally protected right is violated by the City when its police respond slowly to calls from the NAC area. In paragraph thirty-six of their amended complaint, appellants allege violations of the Fourteenth Amendment. This constitutional amendment is violated when a police department fails to respond to calls from a neighborhood because of the racial make-up of the neighborhood. As this circuit has previously held, "an officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denied equal protection to persons legitimately exercising rights guaranteed them under state or federal law." *Smith v. Ross,* 482 F.2d 33, 36–37 (6th Cir.1973). Therefore, the trial court's dismissal of the appellants' § 1983 claim against the City was an error that was not harmless.

### III.

In conclusion, we AFFIRM the district court's dismissal of the appellants' claims under the Fair Housing Act, 42 U.S.C. § 3601, and under the Civil Rights Act of 1866, 42 U.S.C. § 1982. We REVERSE the district court's dismissal of the appellants' claims under Title VI, 42 U.S.C. § 2000d; the Civil Rights Act of 1870, 42 U.S.C. § 1981; and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Finally, we hold that the NAC has associational standing to pursue claims for injunctive relief but does not have associational standing to obtain compensatory damages on behalf of its individual members.