Vibart **SUBRYAN**, Plaintiff,

v.

The **REGENTS OF the UNIVERSITY OF COLORADO**, et al., Defendant.

Civ. A. No. 81–K–1860.

United States District Court, D. Colorado.

Feb. 19, 1993.

George C. Price, Denver, CO, for plaintiff.

Joanne McDevitt, Sp. Asst. Atty. Gen., Boulder, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is an action under Title VII, § 1983 and Title VI based on employment discrimination. Plaintiff Vibart Subryan claims that the Regents of the University of Colorado and three administrators (collectively, "the University") terminated his employment as a senior instructor at the School of Medicine because he is black. The University moves to dismiss or for summary judgment, claiming that Subryan's Title VII claim is barred by laches. The University

also argues that Subryan's § 1983 claim is barred by res judicata and the defendant administrators' qualified immunity, and that his claim under Title VI should be dismissed for failure to exhaust administrative remedies. For the reasons stated below, the University's motion is granted in part and denied in part.

## I. *Facts.*

In 1963, the University's School of Medicine employed Subryan as a research technician. In 1977 he was promoted to the position of senior instructor. He also served as a co-assistant director of the Clinical Research Center Laboratories. On February 2, 1980, the University informed Subryan that he would be reappointed as a senior instructor for only one year, instead of the three-year term required by the University's regulations.

On October 15, 1981, Subryan filed an action in state court seeking a declaration that the University breached his employment contract. Seven days later, on October 22, 1981, he filed this lawsuit, claiming discrimination on the basis of race and violations of his civil rights. Subryan alleged claims under Title VII, § 1981, § 1983, Title VI and Executive Order 11246.[1]

Subryan's state court action was tried on March 5, 1982. On May 28, 1982, the state court entered a judgment finding that the University had breached Subryan's contract by terminating his employment as of February 2, 1982. The University moved for reconsideration of the order, which was denied, and then appealed to the Colorado Court of Appeals. On December 20, 1984, the court of appeals affirmed. *See Subryan v. Regents of Univ. of Colo.*, 698 P.2d 1383 (Colo.App.1984). The Colorado Supreme Court denied the University's petition for certiorari on April 22, 1985.

While the University's appeal to the Colorado Court of Appeals was pending, Subryan filed a motion for preliminary injunctive relief on his § 1983 claim in federal court. In an order entered December 30, 1982, I denied the motion and ruled that the

action would be abated pending "a final adjudication ... in the state court proceeding." My action was based on both parties' representations that many issues in Subryan's federal suit would be resolved in the state court proceeding. (*See, e.g.* Defs.' Mot. Dismiss, Attach. 17 at 2; *id.*, Attach. 18 at 5.)

After the Colorado Supreme Court denied certiorari on the University's appeal, Subryan moved for additional relief in state court. In papers filed October 29, 1985 and May 22, 1986, Subryan requested compensatory and punitive damages for breach of contract and failure to reinstate. In addition, he added claims for due process violations under § 1983 and Article II, § 25 of the Colorado Constitution, and a claim for attorney fees under § 1988. The state court rejected Subryan's claim under § 1983, finding it barred by the statute of limitations, and limited Subryan's other claims for damages. After a jury trial, Subryan was awarded stipulated contract damages of $72,371, damages for willful failure to reinstate of $43,164, and exemplary damages of $10,000. The University appealed this decision to the Colorado Court of Appeals, which reversed the award of punitive damages. *See Subryan v. Regents of the Univ. of Colo.*, 789 P.2d 472 (Colo.App.1989). Its further petition to the Colorado Supreme Court was denied on June 14, 1990. Subryan then moved to reinstate this action on March 10, 1992. I granted his motion on May 28, 1992.

## II. *Merits.*

### A. *Laches.*

The University moves to dismiss Subryan's Title VII claim, or in the alternative for summary judgment, based on the doctrine of laches. I treat the University's motion as one for summary judgment, since it requires me to consider matters outside the pleadings. Fed.R.Civ.P. 12(c). "Summary judgment is appropriate when there is no genuine dispute over a material fact and when the moving party is entitled

---

1. On August 13, 1992, Subryan stipulated to the dismissal of his claims under § 1981, Executive Order 11246 and for punitive damages. In addition, he dismissed his claims under § 1983 against any public entities or individuals in their official capacities.

to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991).

[1, 2] "Whether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." *Garrett v. General Motors Corp.*, 844 F.2d 559, 562 (8th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 248 (1988). The University bears the burden of persuasion on this affirmative defense. *See Whitfield v. Anheuser–Busch, Inc.*, 820 F.2d 243, 244 (8th Cir.1987). To prevail on its motion for summary judgment based on the defense of laches, the University must establish that there is no genuine issue of material fact that (1) Subryan has unreasonably delayed the proceedings, and (2) the University has been substantially prejudiced by the delay. *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 679 (7th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986).

■ Here, there is no dispute as to the facts upon which the University's laches argument rests. Subryan's state law breach of contract action was completed when the Supreme Court denied certiorari on the University's first appeal on April 22, 1985. Subryan did not move to reinstate this action until March 10, 1992, a delay of almost seven years.

To determine whether there has been an unreasonable and unjustified delay, I must "consider both the length of the delay and the plaintiff's reasons for the delay." *Whitfield*, 820 F.2d at 245. Subryan argues that there was no unreasonable delay because the length of the delay should be measured from the date the Colorado Supreme Court denied certiorari on the University's appeal on the damages issue, June 14, 1990. Using this date, the delay was only two years. I disagree. Subryan could and should have reinstated this federal action in 1985 when it was conclusively determined that he had a property interest in his employment. The proceedings on his request for additional relief and damages were irrelevant. The length of the delay, seven years, is in these circumstances un-

reasonable. *See, e.g., Cannon v. University of Health Sciences*, 710 F.2d 351, 359 (7th Cir.1983) (delay of between three and five years unreasonable); *Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 960 (9th Cir.1979) (delay of seven years unreasonable).

Furthermore, I find the delay to be unjustified. Unlike other cases in which the plaintiff's failure to timely prosecute a Title VII claim was due to events beyond his control, *compare Raley v. Board of St. Mary's County Comm'rs*, 752 F.Supp. 1272, 1277 (D.Md.1990) (seven and one-half year delay not unreasonable when plaintiff awaited completion of administrative proceedings and made numerous calls to determine the status of her claims), Subryan's only explanation for failing to reactivate his federal claim is that he believed it was necessary to prosecute his additional state law claims for damages to completion. Subryan was represented by an attorney at the time his federal suit should have been reactivated. His attorney's miscalculation as to the necessity of a final decision on damages does not excuse this significant delay.

Having concluded the delay was unreasonable and unjustified, I must next determine whether the University has been substantially prejudiced by the delay. To establish material prejudice, the University must show some prejudicial change " ' " "in the condition or regulations of the ... parties." ' " *Jeffries*, 770 F.2d at 680 (citations omitted). The University has submitted the affidavits of two of its primary witnesses in this action, defendants Schrier and Olefsky. Both indicate they have a diminished recollection of the salient events leading to Subryan's termination. Further, both state that much of the decisionmaking relative to the termination of funding for Mr. Subryan's position came from individuals working for the National Institutes of Health who would be difficult, if not impossible, to locate.

Subryan offers no evidence to rebut these affidavits, asserting only that the University could have moved to reinstate the action if it felt prejudiced by the delay.

The burden to prosecute this action, however, rested squarely on Subryan's shoulders, not the University's. The University need not establish that its witnesses are entirely unavailable; difficulty of locating these witness and procuring their testimony is sufficient. *Id.* at 680–81. This, coupled with the stale memories of the defendant administrators as to the relevant events, supports a finding of undue prejudice. There being no material issues of fact in dispute, I grant summary judgment in favor of the University on the Title VII claim based on the defense of laches.

### B. *Res Judicata.*

The University next contends that Subryan's § 1983 claim is barred under the doctrine of res judicata, or claim preclusion. It argues that Subryan could have brought a timely § 1983 claim in state court, but failed to do so within the statute of limitations.[2] Thus, because the alleged § 1983 violation was an issue that could have been litigated in the state court action, the University asserts that this claim is precluded.

■ To determine whether Subryan's state court action precludes his § 1983 claim here, I measure the effect of the state court judgment under state, not federal, law. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Under Colorado law, "[r]es judicata operates as a bar to a second action on the same claim as one litigated in a prior proceeding when there is a final judgment, [and] identity of subject matter, claims for relief and parties to the action." *City & County of Denver v. Block 173 Assocs.,* 814 P.2d 824, 830 (Colo.1991). The doctrine bars not only claims actually decided but claims or remedies which should have been raised in the first proceeding but were not. *Id.; Shaoul v. Goodyear Tire & Rubber, Inc.,* 815 P.2d 953, 954 (Colo.App.1990). Its use is intended "to prevent parties from splitting their cause of action and instituting separate suits for the same claim." *Shaoul,* 815 P.2d at 955.

Colorado courts have applied § 24 of the Restatement (Second) of Judgments with respect to the dimensions of a claim to be precluded. *See id.* Under that section, a valid judgment extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (1982). Section 24, however, is subject to certain exceptions. For example, claim preclusion does not apply when "[t]he parties have agreed in terms or effect that the plaintiff may split his claim, or the defendant has acquiesced therein." *Id.* § 26(1)(a).

■ Here, assuming that Subryan's § 1983 claim falls within the same transaction or series of events as in the state court action, the "acquiescence rule" of § 26(1)(a) of the Restatement applies. Subryan filed his state court action on October 15, 1982 and his federal court action on October 22, 1982. The University did not object to Subryan's splitting of his claims between these fora or to this court's order holding the federal action in abeyance pending resolution of state law issues.[3] It should not be permitted to assert preclusion now. *See Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730, 735 (9th Cir.) (under Restatement, party never objecting to separate trials cannot later object to action being split), *cert. denied,* 488 U.S. 948, 109

---

**2.** Subryan initially did not plead a § 1983 in the state court declaratory judgment action. He added this claim on October 29, 1985, in a petition for further relief under Colo.R.Civ.P. 57(h) and Colo.Rev.Stat. § 13–51–112. The state court dismissed Subryan's § 1983 claim in a minute order entered July 11, 1986 because it was barred by the two-year statute of limitations, which began to run upon Subryan's termination in February, 1982.

**3.** Nor would the University's objection have been of much benefit. Even if Subryan could have tried his § 1983 claim in state court, jurisdiction over his Title VII claim was limited to federal court. A federal lawsuit was inevitable. *See, e.g., McNasby v. Crown Cork & Seal Co.,* 888 F.2d 270, 276–77 (3d Cir.1989) (claim preclusion not applicable where state court had no jurisdiction over Title VII claim).

S.Ct. 378, 102 L.Ed.2d 367 (1988); *Calderon Rosado v. General Elec. Circuit Breakers, Inc.*, 805 F.2d 1085, 2087 (1st Cir.1986) (federal age discrimination claim not barred where defendant did not object to separate trial of state wrongful discharge claim). While there are no Colorado cases directly controlling, I believe Colorado courts would apply § 26(1)(a) of the Restatement in these circumstances to hold that Subryan's § 1983 claim is not barred by res judicata.

## C. *Qualified Immunity.*

■ Alternatively, the University maintains that the individual defendants have qualified immunity as to Subryan's § 1983 claim. Qualified immunity allows a public official to escape liability if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The University argues that its administrators are entitled to qualified immunity because it was not clearly established that Subryan was entitled to three year's notice when his contract was not renewed and because its administrators' discretionary actions were objectively reasonable.

In *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir.1992), the Tenth Circuit recently explained the procedure for analyzing a claim for qualified immunity.

First, the defendant must raise the defense of qualified immunity. Once the defendant has adequately raised the defense, the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law. Then the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute.

*Id.* at 1396–97. The plaintiff's burden to show a violation of clearly established law is not a light one. He must "do more than simply allege the violation of a general legal precept." *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir.1992). Case law requires "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Stated differently, "[t]he plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990).

To assess whether the individual defendants, the University Regents and three administrators, have qualified immunity in this case, I must first outline the components of Subryan's § 1983 claim. Subryan has plead two theories in support of this claim: one based on equal protection and the other based on due process. (Compl. ¶ 23.) In essence, Subryan claims that his termination based on race denied him equal protection of the laws and that his failure to receive three years' notice of termination, without a hearing, was a deprivation of due process.[4] Subryan concedes that "the allegations of the Complaint are insufficient to attribute racial animus to the Regents." (Pl.'s Br.Opp.Defs.' Mot. Summ.J. at 11.) Therefore, I construe the equal protection component of Subryan's § 1983 claim as alleged against only the defendant administrators.

■ With respect to his § 1983 due process claim against both the Regents and the administrators, Subryan has not identi-

---

**4.** Although Subryan's § 1983 equal protection claim would seem to overlap entirely with his Title VII claim, the Tenth Circuit has held that a § 1983 claim is not preempted by Title VII, "even if the claims arise from the same factual allegations and even if the conduct alleged in

the § 1983 claim also violated Title VII," so long as it rests on a constitutional or statutory right independent of Title VII, such as the Equal Protection Clause. *Notari v. Denver Water Dept.*, 971 F.2d 585, 587 (10th Cir.1992).

fied any judicial decision or statute existing at the time of his termination clearly establishing that he had a right to three years' notice, and I have located none. Therefore, the individual defendants are entitled to qualified immunity on this claim.

On the other hand, the notice issue is irrelevant to Subryan's § 1983 equal protection claim against the defendant administrators. On this score, the University concedes that "there is no doubt that it is a clearly established right of the plaintiff not to be terminated from employment solely on the basis of his race." (Defs.' Mot.Dismiss at 25.) The University contends, however, that it terminated Subryan's position solely because the National Institutes of Health discontinued the funding for it. It supports this statement with the affidavits of defendants Schrier and Olefsky, which relate that the decision not to extend Subryan's contract was essentially dictated by the National Institutes of Health and was unrelated to Subryan's race. (*See* Defs.' Mot.Dismiss, Attach. 24, 25.)

The administrators' subjective intent to discriminate is an essential element of Subryan's § 1983 equal protection claim. Since the University has made a prima facie showing of the objective reasonableness of its administrators' actions on its motion for summary judgment based on qualified immunity, Subryan may avoid summary judgment " 'only by pointing to *specific evidence* that the official's actions were improperly motivated.' " *Lewis v. City of Fort Collins*, 903 F.2d 752, 758 (10th Cir.1990) (emphasis added). Subryan has failed to make any showing whatsoever in this regard. Accordingly, the University's motion for summary judgment is granted as to Subryan's § 1983 equal protection claim as well.

D. *Exhaustion.*

The University's final contention is that Subryan's Title VI claim is barred by his failure to exhaust administrative remedies. Title VI prohibits entities receiving federal assistance from discriminating on the basis of race. *See* 42 U.S.C. § 2000d. It contains an elaborate administrative en-

forcement mechanism "which allows the federal funding agency to attempt to secure compliance [with Title VI] and, failing that, to terminate the violator's federal funding." *Neighborhood Action Coalition v. City of Canton, Ohio*, 882 F.2d 1012, 1014 (6th Cir.1989).

The University relies on *Wrenn v. State of Kansas*, 561 F.Supp. 1216, 1222 (D.Kan.1983), which holds that a plaintiff must first resort to this administrative process before bringing a Title VI claim or plead that exhaustion would be futile. *Wrenn*, however, does not represent the majority view. Most courts hold that there is no exhaustion requirement under Title VI, basing their reasoning on dicta in the Supreme Court's decision in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). *See Doe v. Garrett*, 903 F.2d 1455, 1460 (11th Cir. 1990) ("it is established, as a general matter, that Title VI ... does not incorporate Title VII's requirement of exhaustion of administrative remedies"), *cert. denied*, —— U.S. ——, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); *Neighborhood Action Coalition*, 882 F.2d at 1015 (citing cases). In *Cannon*, the Supreme Court compared Title VI to Title IX and expressed doubt that exhaustion under either statute would be appropriate. 441 U.S. at 706 n. 41, 99 S.Ct. at 1962 n. 41; *see also North Carolina Dept. of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6, 21, 107 S.Ct. 336, 345, 93 L.Ed.2d 188 (1986) (including Title VI plaintiffs within the category of claimants "unfettered by a requirement that they exhaust administrative remedies"). This is because "[l]ike Title IX, Title VI does not provide a mechanism by which the class protected by the statute can actively participate in the administrative process. Under such circumstances, requiring litigants to exhaust their administrative remedies would impose an undue hardship and delay upon their attempts to vindicate their rights." *Neighborhood Action Coalition*, 882 F.2d at 1015. I follow the majority view and hold that Subryan was not required to exhaust his administra-

tive remedies or plead futility before bringing his Title VI claim.

Accordingly, IT IS ORDERED THAT the University's motion to dismiss and/or for summary judgment is GRANTED as to Subryan's Title VII claim and § 1983 claim and is DENIED as to Subryan's Title VI claim.